LAZARUS TILMAN, plaintiff in error, vs. JOICY STRINGER, defendant in error.

The complainings of negroes, as to their diseases, are admissible in evidence.

If unsound property is of any value either at the time of sale or afterwards, the purchase money with interest is not the proper criterion of damages.

Although the Court charge the law erroneously, still, if the verdict of the jury be right, no new trial will be granted.

Debt, from Harrris county. Tried before Judge WORRILL, April Term, 1858.

Joicy Stringer purchased of Tilman a negro woman which was warranted to be sound; upon which warranty the said Joicy brought this action, alleging a breach of the same.

On the trial it appeared from the testimony of H. D. Williams that plaintiff was a widow, and her late husband was witness' nephew; knew the negro woman about whom this suit was instituted; supposed her to be some forty or forty-five years of age; was not present when she was purchased. Lived very near plaintiff and was sometimes consulted by her in reference to business. The negro woman was left by defendant with plaintiff for a short time before the purchase, on trial; perhaps a week or two, not positive how long. At request of plaintiff he looked at the negro before the sale; and at that time merely looking at her, he did

not discover she was diseased; she was apparently a tolerably good looking negro, and quite *pert*. Some five or ten days after the purchase he saw her again, and then thought from her appearance and actions that she was not well, and undertook to inquire into the matter. She then complained of pains in her back and head, and side and shoulders.

Counsel for defendant objected to any of the negro's sayings about her situation. The Court overruled the objection, and defendant's counsel excepted.

The negro was in the field at this time, but seemed to be lagging behind the other hands. After this he saw her two or three times a week, and she was frequently complaining; did not have a healthy appearance, looked rather *ashy;* during a year or two after the purchase grew worse and worse; sometimes would lie up; that he had frequently seen her up to last Christmas, and knowing said negro as he did, with the disease on her, in his opinion she was at this time of no value. That to one who did not know her as he did, but from her appearance, her age, &c., and in a sound condition, she probably would bring in the market some four or five hundred dollars at the time he first knew her.

Plaintiff read the bill of sale of said negro from defendant to plaintiff, bearing date January 18th, 1854, whereby the defendant acknowledged the receipt of nine hundred dollars for said negro, aged thirty years, and warranting her sound in body and mind.

On cross examination of said Williams, it appeared that the plaintiff paid for said negro by giving a note of nine hundred dollars, payable 25th of December after the sale, without interest, and that said note had been paid.

*Erastus C. Hood* testified he was a practising physician; that he was called in some two years after the sale, to examine said negro as to her condition. Made no particular physical examination; looked at her tongue, but most of his information was derived from her own statements. She said she had pains in her head, back and side, and great diffi-

culty in urinating, and it was attended with some pain. She was feverish, and her tongue was furred. That his medical opinion was, from the symptoms thus detailed to him, that the womb of the negro was affected, probably a tendency to *prolapsus;* that the urinary organs were affected with probably some inflammation of the bladder, and womb, and kidneys; he did not prescribe for her, for he thought to cure her would require a course of treatment for some time. Could not state how long she had been diseased, but thought it was chronic, and not of recent origin; but could not say she was diseased at the time of the sale to plaintiff.

From her appearance if sound she was probably worth five or six hundred dollars. In her diseased condition, as he saw her, could not say she was worth anything.

*Stringer* testified, some year or more after the sale she was sent by plaintiff to Hamilton, and exposed to sale at public outcry. She was put up, and nothing said about soundness or unsoundness; and under the instructions, not to let her go under $700—and the highest bid being $560, she was bid in for plaintiff. During the crying of bids, some drunken fellow came up and said he had a title to the negro, but witness had a statement made that the title was good.

*Edwards*, the son-in-law of plaintiff, testified that he saw her about twelve months after the purchase; she was frequently complaining; she was not healthy, and at the request of plaintiff, he told defendant to take the negro back, which defendant declined. The negro was not present at the time. She worked some, and sometimes would lie up, complaining. If sound she would probably bring from $500 to $700. In her present condition might bring $200 or $300, but as for himself, he thought she was worthless.

Defendant's counsel objected to negro's statement of her condition. Court overruled objection, and defendant's counsel excepted.

*Eldridge Winslow* testified by interrogatories that he once owned the negro, sold her to defendant, and she was sound

so far as he knew. Owned her about a year; she some-
times complained of head ache, back ache, or something
simple, of that sort—not enough to have a physician called.
Bought a plaster for her when she complained of back ache,
and heard no more complaint from her for the ten
months after he owned her; gave $450 and sold her for
$475. Considering her age, does not think the complaint
injured her value, at least while he owned her, and got
what she was worth had she been sound; never missed a
days' work while he owned her. Thinks her age in 1843
38 or 40 years.

*Thomas J. Sears,* for defendant, ·testified that some
three years after the sale he examined the negro; look-
ed at her, felt her pulse, looked at her tongue, but relied for
his opinion principally on her statement. She had pains as
described by other witnesses, and in the abdomen, and what
she termed a pressing or falling down sensation as she term-
ed it; trouble in urinating—her monthly periods very irreg-
ular, coming sometimes only once in two months, or some-
times in a few days; thinks it was caused from change of
life, she being about 45 years old, and the change one which
all females go through about that period, from 40 to 50 years
of age. Her appearance did not particularly indicate dis-
ease; would be worth, if sound, $600 or $700. In her
present condition would be worth from $100 to $300.

Defendant read in evidence interrogatories of Richard A.
Tilman. The negro was sound when defendant sold her.
He knew her. Saw her about two years after the sale; she
did not look as well as when owned by defendant. She
never lost any time or complained, up to the time defendant
sold her while he knew her, and he lived on the same prem-
ises where she did. Is the son of defendant, and 24 or 25
years old; is not a physician, does not remember whether
defendant gave $400 or $500 for her, and sold her for $800
or $900.

Defendant read the testimony of Eldridge Winslow and

Tilman vs. Stringer.

his wife: They knew the negro, once owned her. Knew her last in the possession of Tilman. Knew her three years, and she was sound whilst in their possession, 10 or 12 months. She complained a little of head ache, back ache, or something of that sort; never had a physician with her. Constitution was good so far as they knew. Know nothing of her since she went out of their possession.

The Court then charged the jury that if they believed the negro was diseased at the time of the sale, and from such disease was now of no value, then they must find for the plaintiff the amount paid for her with interest from the time of the sale; but if they believed the negro was diseased at the time of the sale, and that in consequence of such disease had since become and was now of less value, then whatever they believed her to be worth now, that amount they must deduct from the whole amount paid, and find a verdict for the balance, with interest from the time of the sale. But if they believe the negro was diseased at the time of the sale, and in consequence of such disease had become now of no value, then they would find for plaintiff the whole amount paid for her with interest from the time of the sale, though it should be proven that at the time of the sale, or at some subsequent period, she was worth something; but if they believe the negro was not diseased at the time of the sale, then they must find for the defendant.

The jury found for the plaintiff $900 and cost of suit.

The defendant moved the Court for a new trial on the grounds:

1st. That the Court erred in admitting the evidence of witnesses in regard to the sayings and complainings of the negro in relation to her condition.

2d. Because the Court erred in its charge to the jury.

3d. Because the verdict was contrary to law and the charge of the Court.

4th. Because the verdict was without evidence, was contrary to the evidence, and against the weight of evidence.

5th. Because the jury found a gross sum, without discriminating between principal and interest.

The Court overruled the motion for a new trial, and the defendant's counsel excepted and assigns the same as error.

INGRAM & RUSSELL; AND MOBLEY, for plaintiff in error.

D. P. HILL, for defendant in error.

*By the Court.*—LUMPKIN J. delivering the opinion.

But for the finding of the jury, it would be difficult to sustain the judgment in this case. The charge of the Court was wrong, but the verdict of the jury was right. The Court instructed the jury that if they found that the negro was unsound at the time of sale, and had become entirely worthless since, they should give their verdict for the whole amount of the purchase money with interest, "notwithstanding the negro may have been of some value at the time of sale. or. afterwards."

The price paid for the negro was $900. The verdict of the jury was for that amount *without interest.* The jury therefore, must have set off the hire against the interest. In other words, found that the hire of the negro was worth the interest on the purchase money. Considering the negro of some value, they not only allowed the defendant something, but a pretty full price; at the rate of $63 per year for the use of the negro.

This sum seems large; but it is what the plaintiff paid for the woman. If the price be exorbitant, the defendant fixed it. That was the estimate put by him on the property at the time of sale  Too high, we have no doubt; still, it was exacted by the defendant and paid by the plaintiff. And consequently constitutes the proper basis for estimating the damages in this case.

Although the charge of the Court be wrong, still if it does

not control the jury, but they find contrary to it, it is not ground for a new trial, even under the New Trial Act of 1853–4.

We find no merit in the other grounds.

According to our understanding of the evidence, the verdict in this case is based upon the fact that an offer was made, and refused, to return the negro. The verdict can only be sustained upon that hypothesis.

We shall affirm the judgment, then, provided the plaintiff will, within a reasonable time, return the woman to the defendant, or offer to do so.

Judgment affirmed conditionally.