## PITTS vs. THROWER.

1. A bill in equity is filed by B., as the trustee of S. P., a married woman for the recovery of certain negroes. On the trial, no evidence is offered showing the appointment of a trustee, or the existence of a separate estate in the married woman, neither is the husband made a party. A verdict being had for the complainant, on motion made for new trial on these grounds: *Held*, that these objections came too late after a verdict on the merits; by not insisting on them before verdict, defendant is to be held as waiving them.

2. When the Court grants a new trial on the ground that the verdict is contrary to evidence, against the weight of evidence, against law and the charge of the Court, this Court will reverse such judgment, granting the new trial whenever it appears from the record, that the verdict is not contrary to evidence, nor the weight of evidence, or against law, although it may be against the charge of the Court, the charge itself being wrong.

In Equity, in Spalding Superior Court. Tried before Judge CABANISS, November Term, 1859.

This was a bill in equity, brought by Sally Pitts, wife of Laban Pitts, by her trustee, and Alexander Kendrick and Bethena, his wife, against Thomas Thrower, for the recovery of an interest in certain negro slaves, etc., in the possession of said Thomas.

The bill alleges that complainants, Mrs. Pitts and Mrs. Kendrick, are the children of Margaret F. Thrower, late deceased, by her first husband, —— Williams, and that defendant is the son of said Margaret by her last husband, Jeremiah Thrower; that in the year 1808, Joseph White, the brother of said Margaret F., executed a bill of sale, conveying a negro woman named Member, and her increase to said Margaret F. for life, remainder at her death to complainants and their sister Polly, (they being the three youngest children of said Margaret by her first husband, (and Thomas Thrower the defendant; that said Margaret F. sur-

vived her husband Jeremiah and continued in the possession of said negro woman and her increase, till her death, in 1850, when the life-estate terminated, and the remaindermen became entitle to the possession of said negroes. The bill further states, that the defendant, since the death of said Margaret, has taken and held possession of all said negroes, claiming them absolutely in his own right, under a bequest thereof to him, in and by the last will and testament of said Margaret F., and he refused to have said negroes partitioned amongst said remaindermen, or to account for their hire, etc.

To this bill defendant pleaded in bar, the receipts executed to·him by complainants for the legacies bequeathed to them in and by the last will and testament of said Margaret F., and having received said legacies, they have recognized her title in and to said negroes, and her right to dispose of the same, and that complainants are thereby concluded from setting up any claim or interest in conflict with said will.

The defendant also filed his answer to complainants' bill denying their right or title to said negroes, or any portion or share thereof, and alleges and insists that said negro girl, Member, at the time said bill of sale was executed, was the property of Jeremiah Thrower, the husband of said Margaret F., which negro he received from said Joseph White, in exchange for a negro given to his wife by her father, and that after said negro became the property of said Jeremiah, and the title had passed from Joseph White, he made said bill of sale, which, under such circumstances, conveyed no title to said Margaret and her children, but said negro and her children remained the property of said Jeremiah, the father of defendant, until his death.

Complainants met defendant's plea by alleging and charging, that the receipts given by them for their legacies, under the will of said Margaret F., were obtained from them by the fraud of defendant, and in ignorance of their rights.

The case was tried upon the bill, answer and proofs. After the charge of the Court, the jury returned a verdict for complainants; whereupon, counsel for defendant moved for a new trial on the following grounds:

1st. Because the Court erred in permitting the complainants to give in evidence the sayings of David White, the father of Margaret F. Thrower.

2d. Because the Court erred in permitting complainants to give in evidence the sayings and declarations of Joseph White, made after he parted with the possession of the negroes.

3d. Because the Court erred in refusing to permit defendant to prove the sayings and declarations of Joseph White, made before the execution of the bill of sale under which complainants claim.

4th. Because the Court erred in permitting complainants to give in evidence the sayings of Margaret F. Thrower.

5th. Because the Court erred in receiving the testimony of Eli Benson, the trustee of Mrs. Pitts.

6th. Because Laban Pitts, the husband of Sally Pitts, was not made a party to said bill.

7th. Because complainants introduced no evidence to shew title in the trustee of Sally Pitts.

8th and 9th. Because the verdict of the jury was without any evidence to support it, and decidedly against the weight of evidence, against the law and the charge of the Court.

10th and 11th. Because one of the jury had formed and expressed an opinion before he heard the evidence, argument or charge of the Court, and which fact was unknown to the defendant at the time the jury was selected or stricken.

12th. Because one of the jurors who tried said cause, after the jury was charged with the case, and instructed not to speak to any one about it, did, in violation of said order converse with other persons than his fellow-jurors about the case, and expressed a strong and decided opinion against the defendant.

13. Because of the discovery of evidence since the trial material to the defense and not before known.

The presiding Judge, after argument, and a very able and elaborate review of the grounds of the motion for a new trial, ordered the verdict to be set aside and granted a new trial, on the ground : That there was no evidence showing any title for the property in dispute in the trustee of Mrs. Pitts, and in the absence of such proof, holding, that her husband ought to have been made a party complainant with her ; and on the further ground, that the verdict was decidedly against the weight of evidence, and contrary to law and the charge of the Court.

To which ruling and order counsel for complainants except, and assign the same as error.

Pitt *vs.* Thrower.

GREEN, MARTIN, GIBSON and MOORE, for the plaintiffs in error.

PEEPLES & CABANISS, FLOYD, ALFORD, *contra.*

*By the Court.*—LYON, J., delivering the opinion.

Sally Pitts, by her trustee, Eli Benson, and Alexander Kendrick and his wife, Bethena, filed their bill in Spalding Superior Court against defendant for the two one-fourths of certain negroes in the possession of defendant, with hire, etc. On the trial of the cause in the Court below, much evidence was had on both sides, and resulted in a verdict for the complainants.   The defendant moved for a new trial on thirteen different grounds.   The Court sustained the motion, and granted a new trial on three grounds : the two first of which apply only to the recovery in favor of Sally Pitts—the third to the whole recovery.

1. That complainant introduces no evidence to show title in the trustee of Sally Pitts.

2. Because Laban Pitts, the husband of Sally Pitts, was not made a party to the cause.

3. That the decree of the jury is decidedly against the weight of the evidence, and contrary to law and the charge of the Court.

After defendant had answered the bill on the merits, and a verdict was rendered by the jury, it was too late to deny the character in which complainant sued.

If it was true, that there was no legally appointed trustee, or no separate estate in the wife, or if it was in any way necessary for the husband to be made a party, the defendant ought to have taken advantage of the same before the verdict.   But by permitting the cause to proceed to verdict and final decree, he is to be considered as waiving such objections.

The verdict was on the merits of the title and could not be affected by such defects.   The decree, notwithstanding, could have been so shaped as to provide for and remedy all these difficulties, if the necessity existed.

2. The facts of this case are, that Jeremiah Thrower, the father of defendant, was sometime about the year 1802, on

a visit to his wife's father, David White, in the State of Louisiana; while there, David White gave to him, for his wife Margaret, mother of defendant, and complainants, a negro. But when Thrower started on his return to his family in Georgia, the negro kept out of his way, so that he came home, leaving her there. There is no evidence but that the gift was a *parol* one, and unaccompanied by delivery.

Sometime after Jeremiah's return, Joseph White, a brother of Mrs. Thrower, being about to visit the State of Louisiana, agreed with Margaret and Jeremiah, or with Margaret Thrower, to let them or her have two negroes, old and young Member, for the one David White had given Margaret in Louisiana; provided, old man David White would let him have that negro. What occurred between David and his son Joseph White, in respect to the negro, does not very clearly appear from the evidence. But very soon after his return to Georgia, Joseph White bought old Member back, and made and delivered to Margaret Thrower a bill of sale for young Member, conveying the negro to Margaret Thrower during her life, and at her death to be equally divided between her four youngest children—Polly, Sally and Bethena Williams, children by a former marriage, and Thomas Thrower, the defendant—stating when he made the bill of sale that David White directed him to make the bill of sale for this negro in this way. It does not appear that Jeremiah Thrower ever consented to this arrangement, but the evidence rather tends to satisfy me that he repudiated it entirely. The negroes in controversy are the natural descendants of the negro woman, young Member. Very soon after this transaction, Jeremiah Thrower left his family in Georgia and returned to Louisiana, and, subsequently, enlisted in the army as a soldier, and died some five or six years after he left his family, having never returned to them.

This bill of sale was dated in 1808, under it Margaret Thrower held possession of Member and her increase from that day, down to her death in 1851, not as the property of her husband, Jeremiah Thrower, not as her absolute property, but as property in which she had only a life-estate, and which at her death would go to her four children as named in the bill of sale from Joseph White, as was abundantly proved, not only by the repeated admissions and declarations of herself and the defendant, but by his acquiescence in that

title, from 1823, when he became of age, to the death of his mother, a period of near thirty years.

Under this state of facts, the jury returned a verdict for complainant, directing that the property should be divided into four equal parts, so that complainants should receive two one-fourths thereof.

The Court, on motion, set aside that verdict and ordered a new trial, on the ground that it was decidedly against the weight of the evidence, against law, and contrary to the charge of the Court.

Ought the Court below to have disturbed this verdict on these grounds?

In passing upon these grounds, his Honor Judge Cabaniss, evidently regarded the verdict as depending for its support, almost exclusively on the evidence of the witness, Joseph Williams, and so the case has been mainly argued before us.

It is claimed by counsel for defendant, that this witness was entitled to no credit, on account of certain inconsistencies and contradictions that, they insist, appear from his evidence. He was examined by commission as many as four different times, and three sets of the interrogatories and answers are before this Court. The witness at the time of testifying was sixty-five years old, and he testifies to facts that occurred when he was a boy of 12 or 13 years old, and under the circumstances it would be strange indeed, and almost unnatural, if, in some of the long and sifting examinations to which he has been subjected, when his different answers are compared together, with themselves and with what he had written in reply to a fishing letter of the defendant, to him on this subject, previously to the commencement of any litigation, there should not be found some little inaccuracies and apparent inconsistencies. It is conceded on all hands that if the testimony of this witness is entitled to full credit, that then the verdict ought to stand. Before considering this evidence, let us consider the motion independently of it, that is, as if the testimony of Williams was entirely out of the way, and if the verdict can be maintained without this evidence, then it ought not to be disturbed by the Courts, whether the witness was entitled to credit or not.

Independently, then, of this evidence, and looking alone to the balance of the evidence had on the trial, such as the answer of defendant, his letters and the evidence of the other

witnesses, it is well established that Margaret Thrower held the exclusive possession of these negroes, under the bill of sale, before referred to, from the time her husband left her, between the years of 1808 and 1812, during the balance of her life, claiming only a life-estate in them, and asserting all the time whenever and wherever she is heard from, in respect thereto, that at her death the negroes belonged and were to go to, and be divided amongst her four youngest children, of whom complainants are two, and defendant a third. Such possession was not only inconsistent with a title in her husband's estate, or her son the defendant as his heir at law, but was hostile and adverse to such or any other outstanding title to the negroes. The defendant himself was not only apprized of the character of this adverse holding by his mother, and acquiesced in it, but he expressly admitted that such was her title to these negroes. This evidence was altogether sufficient to enable the complainants to recover in the absence of all other proof. The defendant attempts to overcome the force of this evidence by showing that although, all this is true, yet the negro woman, young Member, was at, and previously to the date of the bill of sale, the property of his father, Jeremiah Thrower, and not the property of Joseph White, to convey in this way. That the marital rights of the husband had attached by his possession, and that it was his property. Admit that he established this fact conclusively, was it not at last a question for the jury to determine, whether he should, after such a great lapse of time, be permitted to disturb a title so long conceded, and so fully acquiesced in by himself, with a full knowledge of all his rights and all the facts. But does the evidence established the defence? Has it been shown that Joseph White made the bill of sale without a right to do so? Has not the possession and claim of title as asserted by complainant, been continued and acquisced in sufficiently long by defendant to justify the jury in their finding; the jury having disregarded the traditionary accounts given by the witnesses of the beginning of the title, and ought the Court to disturb the verdict, on the ground that it was decidedly against the weight of the evidence? We think not.

What are the facts as to the beginning of the title? Up to the time that Joseph White left old and young Member in the possession of Jeremiah and Margaret Thrower, between

the year 1802 and 1808, on the understanding that they should have them for the negro in Louisiana, if David White would let him have her, there is not the slightest evidence

That the gift from David White to Mrs. Thrower had been completed by a delivery. It does not follow that because the witnesses said David White had given, that everything was done to constitute it a good gift. When a gift is proven by parol, everything must be proven necessary to constitute the gift a good one. Then at the time of this provisional arrangement with Joseph White, neither Jeremiah Thrower or his wife, had any title to the negro in Louisiana: on the contrary, the negro belonged to David White to do with as he pleased, to surrender or retain. If he chose to let Joseph White take the negro, or her value in money, on the terms that he should convey young Member to Mrs. Thrower and her four children, he had the right to do so, and Joseph White was bound thereby; he could not avoid it. In such case no interest ever did or could vest in Jeremiah Thrower. It was immaterial whether he accepted the bill of sale or not. Under this view, Member did not vest in Jeremiah Thrower when David White gave to Joseph White money in place of the negro, because that money was given to and received by him on terms. Thus stands this case, and what other verdict could the jury have rendered, that is, if the evidence of Joseph Williams is to be believed, and why should it not be? It is not in conflict with any other, nor is he contradicted or impeached, unless he does so himself. We think the rule by which the Court below tested the credibility of this witness was rather stringent. All the presumptions ought not to have been against his integrity. He was an old man, testifying to facts that occurred fifty years before. It was quite natural to suppose that his recollection would be imperfect; that that which on first examination would appear dim and uncertain, would become clear and more perfect, as his mind should be brought to bear more steadily on the circumstances of a far distant past. But notwithstanding the great time that had elapsed, the number and severity of his examinations, there is great consistency in the whole; true, there is some little inconsistency, and how could it be otherwise? That shows at least that the witness was not swearing to a well studied tale. Take his letter as written to defendant in reply to a fishing inquiry of defendant, written

to him immediately after the death of his mother, to find out whether the witness knew anything, and how much; take that as the basis, and Thrower himself admits so much to be true in his letter to Wm. Williams, and how has he varied from it materially in any of all his depositions? We think that his evidence was not so conflicting or contradictory as to discredit itself, and we hold that the credit to be given a witness is one for the jury to judge of, and not the Court, and that their verdict should never be disturbed because the Court should differ with the jury on the degree of credit to be given a witness, unless, at least, the verdict should depend entirely on the evidence of that witness, and the case a very clear and decided one.

In every view the judgment of the Court granting a new trial was erroneous, and must be reversed. The verdict was not only not decidedly against the weight of evidence, but it was well supported thereby; neither was it against law; indeed, we do not see how the jury could have done otherwise. Certainly no other verdict ought to have been allowed to stand.

Judgment reversed.