BEARRS and others vs. SHERMAN and another.

*October 16 — October 31, 1882.*

56    55
59 LRA   56

NAVIGABLE RIVER. *(1) Obstruction by logs under control of contractor. Owner not liable.*

COURT AND JURY. *(2) Setting aside verdict.*

NEW TRIAL: *(3) Whether granted or refused, exercise of discretion not disturbed.*

1. The owner of logs is not liable for the damages resulting from the obstruction thereby of a navigable river, when such logs were, at the time, in the possession and under the exclusive control of another person under a contract with the owner to run them down the river.

2. It is the duty of the jury to take its law from the court; and this court will hesitate to reverse the order of the trial judge setting aside a verdict because it is in direct conflict with his instructions upon a matter of law, even where such instructions were erroneous. The setting aside of a verdict for such reason must rest mainly in the discretion of the trial judge.

3. The rule that the granting of a new trial is a matter in the discretion of the trial court and that its decision will not be disturbed by this court except in a clear case of the abuse of discretion, applies equally whether the new trial be granted or refused by the court below.

APPEAL from the Circuit Court for *Portage* County.

The case is thus stated by Mr. Justice TAYLOR:

" This action was brought to recover damages for injuries alleged to have been sustained by reason of the obstruction of the Big Plover river, which is alleged and shown to be a navigable river for the purpose of floating logs, timber, and lumber down the same, and which it is alleged the defendants obstructed by keeping and maintaining a large quantity of saw-logs in the channel thereof, thereby preventing the plaintiffs from running down said stream a large quantity of railroad ties, telegraph poles, and fence posts which they had in said stream above such obstructions, and which they desired to run down said stream past and below the place at which

such obstructions were placed and maintained by the defendants in said river, and that by reason of such obstructions the plaintiffs were compelled to take said railroad ties, telegraph poles, and fence posts out of said stream above the place where the same was so obstructed, and transport them to market by railroad at a much greater expense than it would have cost to float them down the said stream to such market had there been no obstructions placed therein by the defendants. Other items of damages were also claimed in the complaint. The defendants answered separately, each denying, generally, that there was any obstruction in fact placed in the stream by any one, and if there were any such obstructions as complained of, they were not placed there or maintained by them, or by their direction.

" Upon the issues made by the pleadings the case was tried in the circuit court, and the jury rendered a verdict in favor of the plaintiffs against both of the defendants for the sum of $1,900. The circuit court, on the motion of the defendants, set aside the verdict and granted a new trial, and from the order setting aside the verdict and granting the new trial the plaintiffs appealed to this court."

The cause was submitted for the appellant on the brief of *G. W. Cate.* He contended, *inter alia,* that the jury had the right under the proof to find that the obstruction complained of was the direct and inevitable result of the work which *Sherman* contracted to do and which *Mitchell* authorized him to do. *Whiting v. Clifford,* 46 Wis., 145; *Hundhausen v. Bond,* 36 id., 29; *Robbins v. Chicago,* 4 Wall., 657. It was the duty of *Mitchell* to see that his property was not so disposed of as to become an obstruction dangerous to the navigation of the river, and he will not be allowed to defeat the plaintiff's claim by showing that he had let the work to an independent contractor. *Chicago v. Robbins,* 4 Wall., 678. The injury was occasioned not by running the logs to the place, but by permitting them to remain there. It is indis-

putable that the logs were in the stream and obstructed the navigation, and that *Mitchell* was cognizant of the extent of such obstruction and that he did not object thereto or take any means to prevent it. He must therefore be held liable, as having ratified the act of *Sherman*. *Sadler v. Henlock*, 4 El. & Bl., 570. Moreover, the contract did not create an independent employment in *Sherman*. It was a simple contract of hiring, and the rule would be the same if he was paid by the day instead of by the thousand feet. He obtained no interest in the property, nor was he, by the contract, to be the master of the possession to the exclusion of the owner, or to have any other or further right in the matter than would be necessary to enable him to discharge the duty he had undertaken. *Homan v. Stanley*, 5 Am. Rep., 389.

There was a brief by *Jones & Sanborn*, for the respondent *Sherman*, and one by *Raymond & Hazeltine*, for the respondent *Mitchell*, and oral argument by *Mr. Jones* and *Mr. Raymond:*

1. When, as in this case, the principal exercises no control over the mode and manner of the performance of the work under a contract, he is not liable for the acts of his contractor. *Harper v. Milwaukee*, 30 Wis., 365. The relation of master and servant, or principal and agent, must exist between the parties, otherwise the principal is not liable. *Pierrepont v. Loveless*, 72 N. Y., 211; *King v. Railroad Co.*, 66 id., 181; *Moore v. Sanborne*, 2 Mich., 520; *Carter v. Berlin Mills Co.*, 7 Cent. L. J., 492; *Corbin v. American Mills Co.*, 27 Conn., 274; *Hundhausen v. Bond*, 36 Wis., 29; Wood on M. & S., 601. Counsel for the respondent *Sherman* argued, also, that he was not liable, the obstruction, if any, having been caused by his son, to whom he had rented the mill and dam. *King v. Railroad Co., supra; Jolly v. Single*, 16 Wis., 280. 2. The granting of a new trial was within the discretion of the court below, and the order will not be disturbed. *Van Valkenburgh v. Hoskins*, 7 Wis., 496; *Lewel-*

Bearrs and others vs. Sherman and another.

*len v. Williams,* 14 id., 687; *Johnson v. Scribner,* 6 Conn., 185; 3 Graham & W. on N. T., 1207; *Jones v. Evans,* 28 Wis., 168; *Van Doran v. Armstrong,* id., 236; *Smith v. Landers,* 48 id., 587.

TAYLOR, J. The evidence given on the part of the plaintiffs on the trial in the court below tends to show that the river was obstructed with logs, etc., at the time when they desired to pass down the same with their drive of railroad ties, posts, etc., so as to render it impossible for them to pass down the stream, and that in consequence they were compelled to take their drive out of the stream above the obstruction, and transport their property to market by railroad, at a very great loss to them. The evidence on the part of the defendants tends to show that the obstructions in the stream were of such a character that they could have been removed in a very short time, and would have been removed if the plaintiffs had brought their drive down near the same, and that the drive could have passed the obstructions without any unreasonable delay. Their evidence also tended to show that the water, a short distance below the obstructions, in the Wisconsin river, and along which the plaintiffs' drive would necessarily pass, if it passed such obstructions, was so low that it would have been impossible to run the drive over the rapids in said river, and it is claimed that the plaintiffs took their drive out of the river above the place where the defendants had temporarily obstructed the same, because of the impossibility of passing the drive over the rapids in the Wisconsin, and not because of the obstruction in the Plover river. Upon these questions it would seem the jury must have believed the witnesses for the plaintiffs, and gave little or no credit to the witnesses for the defendants, as they found in favor of the plaintiffs for the whole amount of damages claimed by them.

The defendants also claimed that if it were admitted

that the Plover river was obstructed so as to render it impracticable for the plaintiffs to pass with their drive, and were therefore justified in taking the same out of the river at the place where it was taken out, and transporting it to market by railroad, and that the damages caused thereby might be recovered from the persons who had obstructed the river below, still neither of these defendants was liable to respond to the plaintiffs for such damages. This claim was based in the case of *Mitchell* upon the evidence introduced by him, showing that the logs which obstructed the stream, although owned by him at the time, were not in fact in his possession, or subject to his control, but they were in the possession of and subject to the control of the other defendant, *S. A. Sherman,* and those acting under him. This evidence was a written contract between *S. A. Sherman* and said *Mitchell,* of which the following is a copy: "This agreement, made this twenty-ninth day of March, 1880, by and between *S. A. Sherman,* of Plover, Portage county, and state of Wisconsin, party of the first part, and *John R. Mitchell & Co.,* of Charles City, Iowa, parties of the second part, witnesseth, that the said party of the first part for the consideration hereinafter mentioned, promises and agrees to take a certain quantity of saw-logs, about 1,000,000 feet, more or less, from below McDill's dam and slide, and belonging to said parties of the second part, and drive them to the mill of the said party of the first part, saw and manufacture them into lumber, as directed by the said parties of the second part, in a good and workmanlike manner, as is usually done by the mills upon the Wisconsin river and its tributaries; also, to furnish good and suitable piling ground, and deliver the lumber by the car load at the pile, as directed by the said parties of the second part. In consideration thereof, the said parties of the second part agree to pay $1.75 per thousand feet, every week, as fast as manufactured. In witness whereof, we

have hereunto set our hands and seals the day and year first above written;" — and the uncontradicted parol evidence of *Mitchell* that after making said contract with *Sherman* he exercised no control or supervision over the logs after they had passed below McDill's dam. This dam is about two miles by the course of the river above the place where the river was obstructed.

*Sherman,* the other defendant, claims that he was not liable to the plaintiffs for the damages caused by the obstruction, if any were caused, because long before the plaintiffs' drive came down the river he had transferred all his rights under the contract with *Mitchell* to his son Eugene, and had leased his mill to said Eugene to enable him to carry out his contract with said *Mitchell;* that his son took possession of his mill and the logs for the purpose of carrying out said contract as assignee of the same; that the defendant *Sherman* had no control of the logs in the stream, hired none of the men to run the mill or take care of the logs in the stream while performing the contract with *Mitchell;* and that he did not have or take any control of the logs after his lease of the mill and assignment of his contract with *Mitchell* to his son Eugene. There was evidence given on the part of the plaintiffs tending to show that both *Mitchell* and *S. A. Sherman* knew that the logs were in fact obstructing the stream, and that the plaintiffs desired to have them removed so that they could pass along with their drive.

Upon the effect of the contract between *Sherman* and *Mitchell* the learned circuit judge instructed the jury as follows: " Now, persons that are liable for a claim for damages stand in such relation to the obstruction as to have either caused the obstruction, and maintained it as such, or they must have a volition and a power over the obstruction in order to render them liable for damages resulting from it. A person is not liable for damages for an obstruction caused by another, and over which he has not authority to direct

how it shall be disposed of. Now, in this matter there has been special proof made here that one of these defendants, *Mitchell*, was the owner of logs,— that is, he had purchased these logs to be delivered by his vendor at the foot of McDill's mill dam, and had entered into a contract with *Mr. Sherman* by which *Mr. Sherman* was to take these logs at the foot of McDill's dam, and run them down to his *(Sherman's)* mill, and there manufacture them into lumber; he, *Mitchell*, receiving the lumber as it was delivered from the mill, and directing its piling, and paying so much for the labor of *Sherman* in running and sawing these logs. The effect of this contract is to give *Sherman* the exclusive control of these logs in handling them, running and handling them down the river to his mill pond, or pockets, and into his mill, and to the time they were manufactured into lumber; and if, in the management of these logs in running them down the stream, *Sherman* suffered them to jam, suffered them to be an obstruction to the navigation of the stream, it is *Sherman's* liability and not *Mitchell's*. And if you find that fact, your verdict should be for *Mitchell*, and not for the plaintiffs, as to him." The remaining portions of said charge, not being material to the questions litigated on this appeal, are omitted.

This is the only part of the instructions of the learned circuit judge which is preserved in the bill of exceptions. To this instruction neither the plaintiffs nor defendants took any exception, and we think that it fairly submitted to the jury the question as to the responsibility of *Mitchell* for the maintenance of the obstruction complained of. If the evidence had any tendency to show that, notwithstanding his contract with *Sherman*, *Mitchell* did, in fact, interfere in keeping the obstruction complained of in the river, we must presume that they were properly instructed upon that question. From an examination of the evidence as found in the printed case, we are unable to find any proof tending to show that *Mitchell*

interfered in any way with *Sherman* or his sons in the control and management of the logs which obstructed the stream after the same left the McDill dam, two miles above. It seems to us that under the evidence and the instructions there was nothing left for the jury to do in the case of *Mitchell* except to bring in a verdict in his favor. The verdict returned by the jury was in direct opposition to this instruction and to the law governing the case as to the defendant *Mitchell*, and was properly set aside for that reason alone as to him. See cases cited in the respondent's brief. Even if there was a doubt as to the propriety of the instruction, we would hesitate to reverse the order of the circuit judge setting aside a verdict which was in direct conflict with his instructions upon a question of law. It is the duty of the jury to take its law from the court; otherwise the jurors become both the judges of the law and the facts in a civil action, which is contrary to a long-established rule of the common law in such cases.

Some courts have gone so far as to set aside a verdict rendered in opposition to the charge of the court upon a question of law, without inquiring whether the instruction was good or bad law. Hilliard on New Trials, 487, § 73; *Rogers v. Murray*, 3 Bosw., 357; *Wood v. Cox*, 33 Eng. L. & Eq., 312. These cases go upon the ground that the jury have no right to usurp the authority of the court, and overrule its determination upon a question of law arising in the case. Such act on the part of the jury is treated as sufficient evidence of perversity on their part to render their verdict upon questions of fact unsatisfactory. Whether a verdict should be set aside when in conflict with the instructions of the judge, even where such instructions are not good law, must rest mainly in the discretion of the trial judge. If he becomes satisfied his instructions were erroneous, and that substantial justice has been done by the verdict of the jury, notwithstanding it is in conflict with his opinion as expressed

in his instructions, he would be under no obligation to set aside such verdict, and he might well refuse to do so; but if, in his discretion, he does set it aside for that reason, we should not be inclined to reverse his order unless we could see from the whole record that the verdict was clearly right upon all the issues in the case, and that the instruction of the judge was clearly wrong. It might well be that the trial judge having given an instruction upon a question of law which, as he then understood the case, would dispose of it on the merits, would fail to give such instructions upon other questions in the case as he would feel bound to give in case his instruction upon the legal point was held to be bad law, and should not in justice dispose of the case as between the parties; and in such case if a verdict were rendered against his instruction, although he might be convinced he was in error, he might, with propriety, direct a new trial for the purpose of putting himself right upon the record, and for the purpose of submitting the case to the jury with proper instructions upon the other points in the case.

But, independent of this question, we think the trial judge might, in his discretion, set aside this verdict upon other grounds. The verdict is a large one, and the evidence at best is of a contradictory and unsatisfactory nature, and the trial judge having expressed his dissatisfaction with the verdict, we are unable to say that he has abused his discretion in granting a new trial.

The rule which this court has repeatedly announced, that it will not reverse the judgment and grant a new trial when the trial court has refused to do so, if there is any evidence to support the verdict, cannot and ought not to apply to the case where the trial court has set aside the verdict and granted a new trial. The application of such a rule to a case of this kind would result in an absolute rule that a new trial could not be granted in any case where there was any evidence to support the verdict; and if the trial court granted

a new trial in any such case, because he was of the opinion that the verdict was not sustained by the evidence, it would be the duty of this court to reverse such order. This, we think, is clearly against the rule long established by this court, that the granting a new trial by the court below is a matter in its discretion, and will not be reversed by this court unless it clearly appears that the trial court has abused its discretion. This rule is equally applicable to the case of granting a new trial as to the case of refusing the same. The following cases in this court were all cases where a new trial had been granted by the trial court, and upon appeal this court was asked to reverse such order: *Van Valkenburgh v. Hoskins*, 7 Wis., 496; *Lewellen v. Williams*, 14 Wis., 687; *Kennedy v. Waugh*, 23 Wis., 468; *Jones v. Evans*, 28 Wis., 168; *Smith v. Lander*, 48 Wis., 587; *Jones v. C. & N. W. Railway Co.*, 49 Wis., 352. In all these cases it is repeated again and again that the granting of a new trial by the court below is a matter in the discretion of the court, and that such order will not be reversed except where it is clear that there has been an abuse of such discretion.

In the last case cited this court said: "It does not follow by any means that because there is some evidence in the case tending to prove the plaintiff's cause of action, and a verdict is rendered in his favor, the trial judge has no power to grant a new trial because he is dissatisfied with the finding of the jury upon the evidence. The establishment of such a rule would prevent a new trial in any case, upon the ground that the verdict was against the weight of evidence."

In the case of *Smith v. Lander* it was said: "The cases in this court relied on by the learned counsel for the appellant for the reversal of this order are all cases in which this court declined to reverse orders refusing to grant new trials; but the conclusion sought to be drawn from the language of the opinions in those cases, that because this court will not reverse an order refusing a new trial when the evi-

dence is conflicting and there is some evidence to support the verdict, therefore an order granting a new trial will be reversed when the evidence is conflicting and there is evidence to sustain the verdict, does not follow. The order being to a great extent a discretionary order, this court will not interfere, no matter whether the order grants or refuses a new trial, unless it is apparent that there is an abuse of this discretion."

In *Van Valkenburgh v. Hoskins, supra,* a new trial had been granted by the court below in a case where the evidence was conflicting. The present chief justice, in delivering the opinion in that case, says: " In the present case, a great amount of testimony was introduced on that point, from which the jury were lead to the conclusion that the sale was valid. The circuit court, being dissatisfied with the result, set aside the verdict and ordered a new trial. The circuit courts have an undoubted right, and it is their duty, to grant new trials where the verdict of the jury is manifestly against the weight of testimony and the clear justice of the case. In passing upon applications for new trials the law requires the circuit court to exercise an enlightened judgment and sound legal discretion. When this is done, this court will not interfere, as we have repeatedly decided."

In *Lewellen v. Williams, supra,* it was held that the old rule was not changed by the code. Chief Justice DIXON says in that case: " The exercise of a sound discretion in such matters often depends upon a variety of facts and circumstances, which cannot be described on paper and brought before the appellate tribunal with their original force and influence, and which no one but the judge before whom the case was tried can fully and properly estimate. Many of these facts and circumstances are absolutely incapable of such delineation, and to say that the discretion depending upon them shall be transferred to another court, there to be exercised without the means of forming a correct judgment,

seems impossible. Courts went far enough when they held that they could only correct, on error or appeal, such an abuse of discretion as was clearly and unmistakably manifested by facts before them, and which it was apparent could not be justified by those facts which did not appear."

Applying the law as declared by the cases above cited, it is clear that the order granting a new trial in this case ought not to be reversed.

*By the Court.*— The order of the circuit court is affirmed, and the cause remanded for further proceedings according to law.