CALLAHAN, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*May 7—October 5, 1915.*

*Railroads: Injury to employee: Action under federal or state law? Pleading: Amendment after proof: Harmless errors: Special verdict: Discretion: Negligence of fireman running engine: Violation of rule: Scope of authority: Abrogation of rule: Verdict contrary to instructions: Perversity: Excessive damages.*

1. In an action for injuries to a railway employee the complaint did not allege that he was engaged in interstate commerce at the time of his injury, but the answer alleged and the undisputed evidence showed that fact, and the court submitted the case to the jury as one covered by the federal statute. *Held,* that there

was no error in such submission and that the complaint should be treated as amended as of course to conform to the proofs.

2. Refusal in this case to submit the issues for a special verdict, the demand therefor by defendant having come too late to make it a matter of right under sec. 2858, Stats., is *held* not to have been an abuse of discretion.

3. In an action for injuries to a railway employee the complaint alleged as negligence the violation of a rule of the defendant company by another employee. At the trial defendant admitted the rule had been violated, but claimed that in violating it the other employee had acted outside the scope of his authority, and that defendant was not liable for his acts. Against objection, plaintiff then introduced evidence that the rule had been abrogated by long-continued practice to the contrary and acquiescence therein by defendant, and afterwards the complaint was ordered amended so as to allege that the rule had been abrogated. Defendant made no affidavit of surprise. *Held*, that the matter rested in the discretion of the trial court, and that the error, if any, in admitting said evidence before amendment of the complaint was in this case harmless.

4. Even if, in attempting to run an engine in the absence of the engineer, in violation of a rule of the company, a fireman was acting outside the scope of his authority so that the company was not liable for his negligence, the company is nevertheless liable for negligence of the engineer in directing the fireman to do as he did and in failing to operate the engine himself.

5. The fireman of an engine who, in furtherance of the railway company's business, attempts to run the engine himself by the direction but in the absence of the engineer, although he thereby violates a rule of the company is not acting without the scope of his authority so as to exempt the company from liability for his acts.

6. A verdict contrary to an erroneous instruction is not necessarily perverse. Thus, where defendant's negligence was clearly proven and the jury found such negligence, even though in so doing they acted contrary to erroneous instructions, this court declines to hold the verdict a perverse one, the trial court having refused to set it aside on that ground.

7. An award of $13,000 for a fracture of the leg of a locomotive engineer twenty-nine years old and earning $1,800 per year is *held*, though large, not to be clearly excessive, it appearing that unusually bad results flowed from the injury, which for a long time wholly incapacitated him for work and permanently precluded him from resuming work as such an engineer, and there being evidence from which a jury might well say that his earning capacity was decreased forty or fifty per cent. MARSHALL, J., dissents.

VOL. 161 — 19

APPEAL from a judgment of the municipal court of Langlade county: T. W. HOGAN, Judge. *Affirmed.*

This was an action to recover damages for personal injury. The plaintiff was a locomotive engineer and was injured in a collision at Aniwa station on the defendant's line in February, 1913. Plaintiff was taking his engine, number 980, from Wausau to Antigo, and was running light. On reaching Aniwa a freight train was overtaken, and it was decided to allow the plaintiff's engine to run ahead of the freight train, which was also destined for Antigo. The plaintiff backed his engine onto a sidetrack, and the other engine, number 1071, was backed south of the sidetrack switch by its fireman under orders from the engineer in charge of it, so as to permit plaintiff's engine to go ahead. Plaintiff's engine proceeded northward to the station, where a stop was made. Engine number 1071 also proceeded northward, and ran into plaintiff's engine as he was about to step therefrom onto the platform, so that he was caught between the engine and the tender and severely injured. The negligence alleged was that the collision was caused by the fault and negligence of the defendant and its employees in violation of their duties to the plaintiff, "because, for the reason, and in that (a) said engine number 1071 was managed, operated, driven, and run by defendant's said other employees in charge thereof in a careless, reckless, and negligent manner; (b) said engine number 1071 was being managed, operated, driven, and run by defendant's said other employees in charge thereof contrary to and in violation of defendant's rules, regulations, directions, and requirements and the established customs and practices, upon which rules, regulations, customs, and practices, and the compliance therewith, the plaintiff relied." The complaint also alleged negligence in failing to ring the bell and sound the whistle on engine number 1071 and in running said engine at an excessive rate of speed. The two last named items of negligence do not appear to have been relied

on in the trial. There is no allegation in the complaint to the effect that the plaintiff was employed by the defendant in interstate commerce. The answer set forth that the defendant was engaged in interstate commerce and that at the time of the injury the plaintiff was employed in interstate commerce. The answer also denied negligence on the part of the defendant and alleged contributory negligence on the part of the plaintiff. The case was submitted to the jury on a general verdict. The jury found for the plaintiff and assessed his damages at $13,000. From a judgment entered in accordance with such verdict the defendant appeals.

*Edward M. Smart,* for the appellant.

*Stephen J. McMahon,* for the respondent.

The following opinion was filed June 1, 1915:

BARNES, J. The issues involving the real merits of this case were those usually met in the ordinary personal injury action. The difficulties arise largely out of alleged defects in pleading and the charge of the court.

There was no allegation in the complaint that the plaintiff was engaged in interstate commerce at the time he was injured or that his cause of action was controlled by the federal act of 1908, 35 U. S. Stats. at Large, 65, ch. 149. The answer set forth that the plaintiff was engaged in interstate commerce at the time of his injury. The complaint was not amended in this regard. The court charged the jury that the uncontradicted evidence showed that the action was governed by the federal law, and submitted the case on this basis. The appellant insists that this was error, and that one cause of action could not be pleaded and another proven and recovery be had on the new cause of action without an amendment to the pleading. The defendant could hardly have been surprised, inasmuch as it pleaded the fact in its answer as the court found it to be. The proof being undisputed, the complaint should be treated as amended as of course to conform to the

proofs.   *Bieri v. Fonger,* 139 Wis. 150, 154, 120 N. W. 862, and cases cited; *Wabash R. Co. v. Hayes,* 234 U. S. 86, 34 Sup. Ct. 729; *Graber v. D., S. S. & A. R. Co.* 159 Wis. 414, 150 N. W. 489.   There are very persuasive reasons why the rule stated should apply to cases of this kind, where it is often a matter of doubt whether the state or federal law is applicable.

Error is alleged because the court refused to submit the issues in the form of a special verdict.   The demand was not made until the evidence was all in on both sides, hence it came too late to enable the defendant to insist on such a verdict as a matter of right.   Sec. 2858, Stats.   We would have been better satisfied had the request been granted.   There is some ground for complaint on the part of the defendant that it was inconsiderately dealt with.   The complaint was drawn on the theory that the federal law did not apply.   Sub. 3, sec. 1816, Stats. 1911, was in force when the plaintiff was injured, although it was not at the time of the trial.   Under this statute it was the duty of the court to submit a special verdict in cases falling within it.   Counsel makes the claim that he assumed that the case would be submitted on a special verdict under the statute as it stood in 1911, and that he did not make a timely demand because he was misled.   In the interest of fairness it would have been entirely proper to have granted the belated request.   The matter was one which rested in the sound discretion of the trial judge, and we cannot say that he abused his discretion.

The complaint alleged, as one of the grounds of negligence relied on, that the movement of the engines which resulted in plaintiff's injury was made in violation of the rules of the company.   Among the rules offered in evidence was one known as "rule 1063," which is as follows:

"Do not run an engine in the absence of the engine man without instructions from the master mechanic, unless in some emergency they are instructed to do so by the conductor or some officer in authority."

On the trial the defendant in substance admitted that this rule had been violated, but insisted that it was not liable, because the fireman in attempting to run the engine in the absence of the engineer was acting outside of the scope of his authority and was practically a trespasser and defendant was not liable for negligent acts done in this way. The respondent then introduced a lot of testimony tending to show that "rule 1063" had been abrogated because of long continued practice to the contrary and acquiescence in such practice by the defendant. This testimony was objected to because it injected a new issue into the case and one that was directly contrary to one of the allegations of the complaint. The objection was overruled and the evidence was admitted and subsequently the complaint was ordered amended by the court so as to expressly allege that the rule had been abrogated. These rulings are complained of. No affidavit of surprise was made, and we think the matters complained of rested in the discretion of the court. It would have been a more orderly proceeding to have amended the complaint first and then offered the evidence, but we do not see how the failure to pursue the regular practice in the instant case did any harm. The error, if there was one, was immaterial for reasons that will hereafter be stated.

Coming to the merits of the case, it appears to us that there was very little evidence that the plaintiff was guilty of contributory negligence, and that negligence on the part of the defendant was so clearly established that there was no question to be submitted to the jury in reference to it.

If we admit defendant's contentions that rule 1063 was not abrogated and that the fireman, Krueger, was acting outside the scope of his authority, we see no escape from the conclusion that engineer Mollitor was negligent in directing the fireman as he did and in failing to operate the engine himself. He was not only violating rule 1063, but also another rule of like tenor which applied specifically to engineers. The fire-

man was more or less under his control and could at least plead the excuse that he was acting under orders from his immediate superior. The engineer had no such excuse to offer, and the allegations of the complaint were broad enough to admit proof of negligence on his part.

But we think the fireman was not acting without the scope of his authority so as to exempt the employer from liability for his acts. It was his duty to be on the engine to assist in running it, keeping a lookout, ringing the bell, and firing. In doing what he did he was attempting to further his master's business. The movement was a proper one if made in a proper manner. The fireman was simply attempting to do too much in endeavoring to perform his own legitimate duties and those of the engineer as well. In attempting to carry the extra load he was doing what he had been forbidden to do, assuming that the rule was in force, and probably what he should not have done if the rule had been abrogated. It seems pretty obvious that two men should have been on this engine while the movement was being made, in order to keep a proper lookout.

Counsel for defendant conceded on the argument that under the rule of the *Daley Case,* 145 Wis. 249, 129 N. W. 1062, the fireman was not acting outside the scope of his authority to the extent that defendant was not liable for his negligence, but insists that this was an extreme case not properly decided and should not be followed. In the *Daley Case* the baggageman threw a tramp, who was stealing a ride, off a car while in motion. It was his duty to take him into the smoking car and introduce him to the conductor, whose business it was to remove the tramp at some proper place. It was held that inasmuch as the employee had a duty to perform in reference to the tramp, the fact that he proceeded to do it in an unlawful and unauthorized way did not relieve the master from liability. This principle is pretty well established in our decisions and elsewhere. It was recognized in *Wilson v.*

*Noonan,* 27 Wis. 598, where a person employed to make a translation made an incorrect one which was libelous, and the employer was held liable. *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304, goes as far as the *Daley Case.* There the proprietor of a saloon was held liable for an assault committed by a bartender in an attempt to make a customer pay for drinks which he ordered. The bartender had the right to collect, but not to use such militant methods in doing so. *Johnston v. C., St. P., M. & O. R. Co.* 130 Wis. 492, 110 N. W. 424, and *Schultz v. La Crosse City R. Co.* 133 Wis. 420, 113 N. W. 658, are within the same principle. In each of these cases the employee had a duty to perform in the matter of protecting the property of the employer, and in each the servant proceeded in an unlawful and unauthorized manner, and the employer was held responsible. The *Daley Case* is also approved in *Zabawa v. Oberbeck Bros. Mfg. Co.* 146 Wis. 621, 624, 131 N. W. 826.

Many foreign cases hold that the real test is whether the act causing the injury was done in furtherance of the master's business. *Jackson v. C., R. I. & P. R. Co.* 178 Fed. 432, 435, and cases cited. Other cases upholding the rule of the cases cited, but phrasing it a little differently in some instances, are *Pierce v. N. C. R. Co.* 124 N. C. 83, 32 S. E. 399; *Haehl v. Wabash R. Co.* 119 Mo. 325, 24 S. W. 737; *Clancy v. Barker,* 131 Fed. 161 and cases cited; *Texas & P. R. Co. v. Hayden,* 6 Tex. Civ. App. 745, 26 S. W. 331.

It seems pretty clear that the fireman was where he had the right to be, that he was performing a service which it was his duty to assist the engineer in performing, and that he was furthering the business of his employer in doing what he did, and that under the decisions of our court and of others as well he was not acting outside of the scope of his employment because he attempted to do too much.

If rule 1063 had been abrogated, then it might be said that the fireman had the right to operate the engine alone, al-

though this is doubtful. But, conceding that the right existed, it is obvious that he was negligent in running the engine he was driving into the one from which plaintiff was alighting and which had been brought to a standstill in front of the station. So we think negligence was established on any theory of the case.

Had the pleadings been properly framed and the jury correctly instructed, the substantial question in this case, and, as we view it, about the only one, would have been the amount of damages which plaintiff was entitled to recover. The questions arising on the pleadings have already been treated. At the request of defendant's counsel the court gave a series of instructions which it is claimed took from the jury any question of defendant's negligence and in fact amounted to a direction of a verdict for defendant, which direction the jury declined to follow. It is argued that the verdict should have been set aside as perverse because of such conduct on the part of the jury. As further indicating passion and prejudice, it is said that the verdict is grossly excessive and should have been set aside for this reason.

The court charged the jury as follows:

"Now I instruct you when fireman Krueger was operating engine 1071, if such operating by him was a violation of the rules of the company, then I charge you that he was not, in so operating said engine, acting within the scope of his employment, and the defendant is not liable for the injury to the plaintiff. I charge you as a matter of law that at the time of the accident which resulted in plaintiff's injuries, fireman Krueger was operating engine 1071 in violation of the rules of the defendant. It is claimed by the plaintiff that the rule of the defendant company which prohibits the fireman from operating an engine in the absence of the engineer under certain circumstances stated therein was abrogated. It is claimed that such abrogation resulted from the custom or practice in conflict with such rule. Abrogation means doing away with, rescission or annulment. A rule cannot be deemed to be abrogated without the consent of the authority

making the rule. Therefore I charge you that a customary violation of a rule does not establish the abrogation thereof, unless such violation was with the acquiescence of the party making the rule under such circumstances that you may infer a consent to the abrogation thereof. Proof of repeated violations of a rule, which are secret and without the knowledge of the party making the rule, does not establish abrogation. I charge you as a matter of law that it appears without dispute in this case that the violations of rule 1063 (with the exception of one instance) were secret and unknown to the defendant. Under these circumstances the single isolated violation in the presence of Assistant Superintendent Armstrong is not sufficient to establish an abrogation. Rule 1063 is a highly beneficial rule tending to protect the safety of employees, property of the company, and passengers traveling on the road or right of way, to the persons lawfully on the premises of the company or on the highway, and you should not on slight evidence conclude that there has been an abrogation thereof. In order to find an abrogation, you should be satisfied to a reasonable certainty that violations thereof were either known to the defendant or were so general that they should have been known, and that the defendant consented to the annulment and doing away with the rule."

The court further instructed the jury as follows:

"Under rule 1063 the engineer under no circumstances had the power, right, or authority to direct the fireman to run the engine in his absence. If the engineer was disabled or emergencies arose so he could not run it himself, it was his duty to report either to the conductor or master mechanic or other officer, and then the fireman should not run the engine except with the consent of such superior officer.

"If fireman Krueger in running the engine in the absence of the engineer was acting outside of the scope of his employment, then he was the same as a trespasser, and he ceased to be a servant or employee of the defendant."

"In determining whether or not fireman Krueger, in running the engine in the absence of the engineer, was acting within the scope of his employment and properly within the rules of the company, you should determine whether an

emergency had arisen within such rule. Even if the conductor did consent to his running the engine, he was authorized to do so only when an emergency had arisen. The mere fact that the engineer was cold and that it might have been inconvenient because of so being cold for him to run the engine would not constitute an emergency under the rule. If, notwithstanding his condition, he could have safely run the engine in the short movement required, then you should find that there was no such emergency existed as is required by the rule."

The court in substance charged that the train conductor was not negligent.

In passing upon the motion for a new trial the court was of the opinion that under the charge the jury might have found that rule 1063 had been abrogated and that the fireman was negligent while acting within the scope of his authority and also that the engineer was negligent.

It seems improbable that the jury understood from this charge that they were at liberty to find that the rule had been abrogated. It is true they were told that in order to find abrogation they must be satisfied that the violations of the rules were known to the defendant or were so general that they should have been known and that the defendant consented to the annulment of the rule. But in a preceding part of the charge they were advised in effect that the evidence which was in fact offered to show abrogation was insufficient to do so. The negligence of the engineer was not withdrawn from the jury, but no reference was made to it in the charge, and in charging on comparative negligence, that of the plaintiff, if any, was compared with that of the fireman, Krueger. We are in the dark as to how the jury disposed of the question of negligence. Except as bearing on the matter of perversity the question is unimportant.

There was perhaps scant room for finding negligence under the charge. It was clearly proven, and, inasmuch as a verdict was not directed, the jury had the right to assume that.

there was something left for them to pass upon and that the question of defendant's negligence was submitted in some form. Under these facts we do not think it should be said that the jury was governed by prejudice and passion because it found the defendant negligent.

The authorities are divided on the question whether a verdict contrary to an erroneous instruction is necessarily perverse. It is true the jury is supposed to accept the law from the court in most cases. In *Bearrs v. Sherman,* 56 Wis. 55, 62, 13 N. W. 869, it is held:

"Whether a verdict should be set aside when in conflict with the instructions of the judge, even where such instructions are not good law, must rest mainly in the discretion of the trial judge."

In *Parkes v. Lindenmann,* 148 Wis. 89, 90, 133 N. W. 580, a perverse verdict is defined as "one rendered in disregard of the law as given to the jury by the court." This is a terse definition of the term "perverse verdict," but one which is not calculated to fit into all situations. The decision in the *Parkes Case* makes no reference to the effect of disregarding erroneous instructions, and was hardly intended to modify the rule of *Bearrs v. Sherman, supra,* else the case would have been expressly mentioned.

The weight of authority outside of Wisconsin is to the effect that a verdict which is contrary to an erroneous instruction is not perverse. *O'Neill v. Thomas Day Co.* 152 Cal. 357, 92 Pac. 856, 858; *Pitts v. Thrower,* 30 Ga. 212; *Tilman v. Stringer,* 26 Ga. 171, 176; *Luken v. L. S. & M. S. R. Co.* 248 Ill. 377, 94 N. E. 175, 180; *Leidigh v. Keever,* 5 Neb. 207 (Unof.) 97 N. W. 801, 802; *Butler v. Rhode Island Co.* (R. I.) 68 Atl. 425, 426; *Pritchard v. Myers,* 11 S. & M. (Miss.) 169, 178; *Eastland v. Maney,* 36 Tex. Civ. App. 147, 81 S. W. 574, 575; *Armstrong's Adm'r v. Keith,* 3 J. J. Marsh. (26 Ky.) 153, 20 Am. Dec. 131; *Watts v. N. & W. R. Co.* 39 W. Va. 196, 19 S. E. 521, 527; *Homuth v. Metro-*

*politan St. R. Co.* 129 Mo. 629, 31 S. W. 903, 906; *Whitney v. Brown,* 75 Kan. 678, 90 Pac. 277; *Alsop v. Magill,* 4 Day (Conn.) 42, 45; *Slate ex rel. Foust v. Stafford,* 70 N. C. 115.

We see no reason for departing from the rule of *Bearrs v. Sherman.* The court in the instant case refused to set aside the verdict as perverse. It is true the court was of the opinion that defendant's negligence was submitted to the jury, but the opinion was also entertained that it would be an abuse of discretion to set the verdict aside in this case, although the jury might have acted contrary to the erroneous instructions, because a new trial would produce a like result. This court declines to hold that the verdict was perverse because contrary to instructions given.

Appellant finally contends that the damages assessed are outrageously excessive. The principal injury was an oblique fracture of the left femur from three to six inches above the knee, and the jury awarded $13,000 damages. It would seem at first blush as though any such allowance for a broken leg was clearly excessive, and yet it is seldom that we find more satisfactory evidence to sustain what might be considered a large verdict than in the instant case. The jury had a right to believe the credible evidence offered by plaintiff. That showed or tended to show that he was earning substantially $1,800 a year as a locomotive engineer; that his expectancy in life at the time of his injury was twenty-nine years, during which time he would be capable of earning $52,000; that the present worth of this earning capacity, computed on a five per cent. basis, was about $24,000; that plaintiff had undergone much pain and suffering on account of his injury and was still suffering pain and that such condition was likely to exist for some time, if not indefinitely; that he was totally incapacitated for work up to the time of the trial and his wages during this interim would amount to about $3,000; that the injury left his leg in such a condition that

he will never be able to resume his work as locomotive engineer; that his leg, as a result of the injury, is short, crooked, and weak, and the motion of the knee joint is only about half of what it was before the injury.

There is little doubt that unusually bad results flowed from the injuries received in this case, the most serious, although not the only one, being the broken leg. There was some evidence at least tending to show that at least a part of the trouble could be removed by an operation, but again the doctors disagree on the advisability of an operation. If it be conceded that the plaintiff's condition is such that he is permanently precluded from following his vocation of locomotive engineer, it cannot be said that the verdict is excessive. He had a long expectancy in life and was earning large wages. If he is obliged to quit the occupation for which he fitted himself, the extent of his capacity for earning in some other field of activity is problematical. A jury might well say that his earning power was decreased forty or fifty per cent., and, if so, the verdict was not excessive. The substantial doubt on the excessiveness of the verdict arises on the question of the permanent incapacity of the plaintiff to run a locomotive. What this court might think about it as an original proposition is immaterial. The jury has found the fact to be that such incapacity exists and will be permanent, and there is sufficient evidence to sustain the finding; so we cannot disturb it.

*By the Court.*—Judgment affirmed.

MARSHALL, J., dissents upon the ground that recovery is excessive.

A motion for a rehearing was denied, without costs, on October 5, 1915.