### Frank Sanders v. The Illinois Central Railroad Co.

1. RAILROADS — *Authority of Freight Train Conductors to Eject Passengers.*—The conductor of a freight train is intrusted with the control of the entire train, and has implied authority to eject trespassers from it. If he exercises such authority improperly his employer will be liable.

2. SAME—*Employes Not Authorized to Commit Wanton or Malicious*

*Acts.*—A railroad conductor is not authorized to commit wanton or malicious acts upon the person or property of others.

3. Same—*Authority of the Conductor.*—The conductor of a railroad train represents the company in the control of the engine and cars, the regulation and conduct of passengers as well as of the subordinate servants. He may eject a passenger for the non-payment of fare, but if he acts wrongfully or uses excessive and unjustifiable force in doing so, the company is liable.

4. Practice—*When the Court is Not Authorized to Take a Case from the Jury.*—Where there is evidence tending to prove all the facts necessary to a recovery the court is not authorized to take the case from the jury.

Trespass on the Case, for personal injuries. Error to the City Court of East St. Louis; the Hon. Silas Cook, Judge, presiding. Heard in this court at the February term, 1900. Reversed and remanded. Opinion filed September 8, 1900.

T. M. Mooneyham and Freels & Joyce, attorneys for plaintiff in error.

Gustavus A. Koerner and Victor K. Koerner, attorneys for defendant in error; John G. Drennan, of counsel.

Mr. Justice Creighton delivered the opinion of the court.

This was an action in case by plaintiff in error against defendant in error, in the City Court of East St. Louis, to recover for a personal injury. Trial was by jury. Verdict and judgment in favor of defendant in error.

The amended declaration on which the case was tried charges in substance, that defendant in error was possessed of and operating a railroad extending from the city of East St. Louis to the city of Belleville, with certain trains of cars running thereon for the conveyance of goods and passengers for reward, and that on, to wit, the 21st day of May, 1898, plaintiff in error got upon one of said trains to be carried from East St. Louis to Belleville, and that while so on said train, and while behaving himself in a peaceable and orderly manner and exercising due care and diligence for his own safety, and while the train was running at a high and dangerous rate of speed, the servants of defendant in error in charge of said train struck him with a club

and beat him and threatened to shoot him with a pistol which one of said servants held in his hand, pointed at plaintiff in error, and that said servants of defendant by these means and in this manner wrongfully, negligently, wantonly and willfully ordered and forcibly ejected and drove plaintiff in error from said train, whereby he was seriously injured.

On the trial of the case plaintiff in error, among other things, testified in substance: My name is Frank Sanders; am plaintiff. Live near the rolling mill, in the outskirts of East St. Louis. On the evening of May 21, 1898, I had been to work; just got through, and I wanted to go to Belleville to see my brother. Brother Ed and I, and a friend, Clem Stevens, were going down to the depot to catch the passenger train to go to Belleville, but before we got to the depot and when down here by the Illinois Central shops, the passenger train pulled out and passed us there; right after the passenger came No. 507, Illinois Central train. This was a freight train; we caught it, intending to go to Belleville. When we got to the other side of the crossing, about a mile or a mile and a half, the brakeman came round and says, "Where are you fellows going?" We told him, and he says, "Come up on top." We came on top; he told us to sit down, and we sat down. He went over toward the caboose. When he came back he had his conductor, I suppose, Mr. Blaney. The conductor came back there and he had a revolver in his hand. He was raving; he was like a crazy man. I was afraid of him. He says, "Where are you God-damned niggers going?" We told him we wanted to go to Belleville. He says, "You must get off; when this train makes the run for the bluff you must get off." We said all right. We intended to get off, but before that he wanted to shoot, whether or not, pointing the gun around. He had the revolver in his hand and flourishing it about, so we told him we would get off. We offered to pay our way; we had money. No, he didn't want no God-damned nigger's money. This brakeman, the head brakeman—I don't know his name—he had a club in his hand.

It was about two feet long, and about the size of my arm. When we went to get off, Clem there got off first, my brother got off next. He struck at Clem, but he didn't strike Clem; he struck Ed there a lick on the back of the head. I ran up to the next car to escape his licks and was getting down. I didn't want to get hurt if I could help it. He struck at me. I was getting down so fast, when I was half way down I missed a step and got my foot caught. According to my judgment the train was going between twelve and fifteen miles an hour; making the run to go over the bluff. When the brakeman invited me to come up on top of the train, I was hanging to the ladder; I was standing on the ladder. Blaney, the conductor, and the brakeman, were on top of the box car. I saw these two men on that train. I never saw them before that time. I am sure they are the two men.

The brother of plaintiff in error and their companion, Clem Stevens, testify to much the same state of facts as testified to by plaintiff in error. They corroborate plaintiff in error as to all the material facts testified to by him.

The fourth and fifth instructions given to the jury by the trial court are as follows:

"4. Even if the jury believe from the evidence that the plaintiff was forcibly and willfully thrown from the cars of defendant by the servants of defendant, the jury should find the defendant not guilty, unless the jury further believe from the evidence that the said servants were then acting within the scope of their employment.

"5. The court instructs the jury that there is no evidence before it from which they can find that the employes in charge of defendant's train had authority from the defendant to eject trespassers from such train."

The fourth instruction, when applied to the facts of this case, is unwarranted and misleading. The servants referred to in this instruction were the conductor and brakeman in charge of the train, and the acts referred to in it, were the joint acts of these two servants of defendant in error. Such acts as the evidence in this case tends to show were committed by the conductor and brakeman, and under such circumstances, were, as matter of law, within the scope of the

conductor's employment. The fifth instruction ignores the inference proper to be drawn from the mere fact of the relation sustained by these two servants to defendant in error in the discharge of the duties delegated by it to the conductor in charge of its train. The conductor was intrusted with control of the entire train and had implied authority to eject trespassers from it, and if he exercised such authority improperly, defendant in error would be liable therefor. In Chicago City Ry. Co. v. McMahon, 103 Ill. 485, Mr. Justice Walker, by way of illustration, in arguing to the conclusion reached in that case, says :

" A railroad conductor or engineer is never authorized to commit wanton or malicious acts on persons or property of others, yet our reports abound in cases holding the railroad companies employing them liable for such acts done while discharging their several duties. Nor is the rule a new one in this jurisdiction, as it has obtained for a quarter of a century or more. Such acts, under the circumstances, are considered as the acts of the company, as it can act only through agents intrusted with the exercise of their franchises."

In Ramsden v. Boston and Albany Railroad Co., 104 Mass. 117, it is said :

" The conductor of a railroad train, from the necessity of the case, represents the corporation in the control of the engine and cars, the regulation and conduct of passengers, as well as of the subordinate servants of the corporation. He may eject a passenger for not paying fare;   *   *   *   if he wrongfully ejects a passenger   *   *   *   or uses excessive and unjustifiable force in ejecting a passenger who has not paid his fare, and injures him by a blow or kick, or by compelling him to jump off while the train is in motion, in either case, the corporation is liable."

Defendant in error insists that no such implied authority exists as to a conductor in charge of a freight train. No authority is cited in support of this contention, and in our judgment the position is unsound in principle and untenable.

When the two instructions above quoted are considered together, they are in effect no less than an instruction directing the jury to find the defendant not guilty. The law is

now as well settled in this State as any rule of law can be, that "where there is evidence tending to prove all the facts necessary to a recovery by a plaintiff, the court is not authorized to take the case away from the jury." In such case the court has no authority to so instruct in submitting the case, as to relieve the jury from the duty of fully considering and passing upon it. In this case there was evidence tending to prove all the facts necessary to a recovery by the plaintiff, and the court erred in giving the fourth and fifth instructions.

The third instruction given in behalf of defendant in error, in substance tells the jury that if they believe from the evidence that plaintiff and his witnesses have knowingly and willfully testified falsely as to any material fact in issue in the case, then the jury have the right to disregard the entire testimony of such witnesses, except in so far as such testimony is corroborated by other credible evidence. Counsel for plaintiff in error say, there was no evidence on which to base this instruction; that plaintiff and his witnesses "were neither impeached nor discredited." To this contention we can not assent. A witness may be both discredited and impeached, by being contradicted by other witnesses, or by facts and circumstances proven. In our opinion there is an abundance of evidence in this record proper for the jury to consider, tending to impeach the plaintiff and both his principal witnesses, to warrant the giving of this instruction.

Some exceptions were taken by plaintiff in error to certain rulings of the trial court concerning the admission of evidence, but under the law as we understand it, and have above stated it, the rulings complained of are not of such consequence, in this case, as to call for discussion here.

Defendant in error insists that the bill of exceptions does not contain all the evidence; that a certain book was introduced in evidence and not transcribed in the bill of exceptions, and that therefore the judgment of the trial court should be affirmed. It appears that certain of defendant's witnesses refreshed their recollection, while testifying, by

referring to certain entries in a book called the train register, but this book was not admitted in evidence. One of the witnesses who had signed his name in this book was refreshing his recollection by it. The name was written in pencil; the witness said, with an indelible pencil; and by agreement of counsel the book was "submitted" to the jury, and the attention of the jury called to the name, "the signature of Mr. Blaney." This signature is the only part of the book "submitted" to the jury. All this is apparent from an inspection of the bill of exceptions and it is manifest that the bill of exceptions fully discloses all the evidence in the respect complained of. Besides, the trial judge has certified that the bill of exceptions contains all the evidence.

It is urged by counsel for defendant in error that this case falls within that class of cases wherein error will not reverse. There is no rule better established than the rule that error will not always reverse, but the distinguishing feature of all cases that properly fall in that class is, that it must appear to the court that upon the conceded or undisputed facts the judgment rendered is the only one that could properly be rendered. This rule does not apply where there is a substantial conflict of evidence as to the material and controlling issues of the case. In the case disclosed by this record the controlling facts are neither conceded nor disputed.

The judgment of the City Court of East St. Louis is reversed and the cause remanded.