## The Chicago City Railway Company

### *v.*

## Catharine McMahon.

### *Filed at Ottawa June 21, 1882.*

1. Evidence—*attempt to suppress evidence or influence a witness.* On the trial of an action on the case, brought against a city railway company to recover for a personal injury, the court allowed a witness for the plaintiff to testify that a clerk in the employ of the defendant offered him $300, either to prevent him from appearing as a witness against the company, or to influence his evidence in favor of the company. This was objected to as no part of the *res gestæ:* *Held,* that the evidence was proper, though not a part of the *res gestæ.*

2. On the trial of a case it may be shown that a party has destroyed or suppressed material evidence, or has fabricated such evidence, as it implies an admission that he has no right to recover if the case is tried on the evidence as it exists.

3. Master and servant—*liability for wrongful act of servant in the scope of his employment.* Where a clerk of a city railway company has assigned to him the general and special duty of looking for and arranging the evidence in cases where the company is sued by persons injured, or claiming to be injured, by the carelessness of those intrusted with the management and operation of its street cars, and is empowered generally to perform that duty without special directions, with general authority to use his own judgment in the performance of his duties, if he, in looking up the evidence in the case, wrongfully and without authority offers money to a witness to keep him from testifying against the company, or to influence his testimony, the company must be held responsible for his act, and it is proper evidence against the company.

4. The master is liable for not only the careless and negligent acts, but also for the willful and malicious acts of his servant while acting within the scope of his duty or employment. This rule is well recognized in this State.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Sidney Smith, Judge, presiding.

Messrs. Dupee & Judah, for the appellant:

Where an agent or servant in a particular business goes outside of his employment, or beyond his authority, in dis-

charging his duties, the master will not be liable for his acts. He is liable only for acts done within the scope of his authority. *Oxford* v. *Peters*, 28 Ill. 434; *Pritchard* v. *Keefer*, 53 id. 117; *Green* v. *Town of Woodbury*, 48 Vt. 5; *Johnson* v. *Barber*, 5 Gilm. 430; *Tulter* v. *Voght*, 13 Ill. 285; *McManus* v. *Crickett*, 1 East, 106; *Halty* v. *Markel*, 44 Ill. 228; *Chicago, Burlington and Quincy R. R. Co.* v. *Casey*, 9 Bradw. 638; *Clark* v. *Metropolitan Bank*, 3 Duer, 241; *Stanley* v. *Chamberlain*, 39 N. J. 565; *Gokey* v. *Knapp*, 44 Iowa, 32; Sherman & Redfield on Negligence, sec. 63.

Mr. JOHN LYLE KING, for the appellee:

The testimony of Taylor to the attempt to bribe him was clearly admissible on two grounds: first, that it was an admission by conduct; and second, it was an admission by conduct of an accredited representative of the company in the course of his duty to or in the performance of an authorized service for the company.

Aside from that class of cases where the acts and conduct of persons are admissible against them, under the maxim in *odium spoliatoris*, (2 Wharton on Evidence, sec. 1265,) there is direct authority in point as to the competency of this evidence. *Moriarty* v. *London, Chatham and Dover Ry. Co.* L. R. 5 Q. B. 314; *Annesley* v. *Earl of Aglesea*, 17 How. State Trials, 1139; *Green* v. *Town of Woodbury*, 48 Vt. 5.

A corporation can act only through the instrumentality of its officers, agents and employés, and if the act of such agent or servant be even willful, wrongful or unlawful, if performed or done in the course of his duty, still it is the act of the corporation, or rather of those representing it, for which the corporation is itself accountable. *St. Louis, Alton and Chicago R. R. Co.* v. *Dalby*, 19 Ill. 353; *Illinois Central R. R. Co.* v. *Read*, 37 id. 484; *Toledo, Wabash and Western Ry. Co.* v. *Harmon*, 47 id. 298; *Chicago, Burlington and Quincy R. R. Co.* v. *Dickson*, 63 id. 151; *Northwestern R. R. Co.* v.

*Hock*, 66 id. 238; *Chicago, Burlington and Quincy R. R. Co.*
v. *Sykes*, 96 id. 162.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee entered a street car of appellant through mistake.
On finding she had boarded the wrong car, she requested the
conductor to stop and permit her to leave it. It is claimed
he refused, and in attempting to descend from the car while
in motion she was injured. She brought an action of case,
alleging negligence, and that she was pushed off by the con-
ductor. Three trials were had. The first resulted in favor
of plaintiff, but the verdict was set aside. The second ended
by the jury failing to agree, and being discharged. The
third resulted in a verdict and judgment for $1500 in favor
of plaintiff. A motion for a new trial was duly entered, but
was overruled by the court. The case was removed to the
Appellate Court for the First District, where the judgment
was affirmed, and the defendant appeals to this court, and
assigns error on the record.

The jury and Appellate Court having settled the facts,
questions of law only are urged for a reversal.

It is alleged for error that the court permitted a witness
to testify that a clerk in the employment of the company
offered him $300, either to prevent him from appearing as a
witness against the company, or to influence the evidence of
the witness. It is insisted that this evidence was not a
part of the *res gestæ*, and for that reason was not admissible.
In answer it may be said, many things are admissible that
are no part of the *res gestæ*, such as admissions of the par-
ties, and all efforts by either to destroy, fabricate or suppress
evidence. Such is the recognized doctrine of the courts.
The rule relating to *res gestæ* did not, therefore, prohibit the
introduction of this evidence.

It is believed to be a rule never questioned, that it may be
shown that a party has destroyed or suppressed material

evidence, or has fabricated such evidence, because it is in the nature of and implies an admission that he has no right to recover if the case was tried on the evidence in the case as it exists,—that it is not sufficient to recover unless aided by suppressing evidence, or the fabrication of more evidence. It follows that all efforts to suborn witnesses, made by a party, or his authorized agent, are for these reasons proper to be shown.

But a more difficult question is presented in this case, and it is, whether the relation of the person offering the bribe to the witness was such to the company that it was responsible for his acts in the matter. Was the act, although unauthorized and unsanctioned by the company, so far within the scope of his employment as to render his acts the same as those of the company? The agent who approached the witness was a clerk in the office of the superintendent of the company. He testified that it was the business of the clerk, in case of an accident, to take the statements of parties and witnesses to it, and that he attended to the business of looking up witnesses for cases in court; to take the statement of parties to the circumstances of the accident; when an accident occurred to investigate and ascertain all he could with reference to its circumstances; that sometimes he was specially sent for such purpose, and sometimes went in pursuance to general instructions; that no person had any authority from the company to deal with any witness in any way; that had any person used money to suborn or get him out of the way, he would have been instantly discharged.

A corporate body being an intangible and mere imaginary body, must, to accomplish the purposes of its creation, employ or act through natural and physical instrumentalities. It must act through natural persons, and such natural persons perform the acts the corporation by its charter is authorized to perform. The agents of the corporation act for it, and it is by such agencies that it can exercise or

perform any function or act, or incur any liability. Most generally the business is divided into departments or sections, and an agent is put in charge and given power to control his department; but generally a superintendent is appointed to direct and control, appoint or remove subordinate agents, and to intrust to each the power he may exercise, and prescribe the duties he shall perform. This superintendent, under the directors, is usually the active head of the body, and all its agencies perform duties and exercise corporate powers as he may authorize and direct.

In this case the clerk had assigned to him the general and special duty of looking for and arranging the evidence in cases where the company was sued by persons injured, or claiming to have been, by the carelessness of those intrusted with the management and operation of its street cars. He was empowered generally to perform that duty, without special directions. That part of the business of the company was placed in his charge, with the general authority to use his judgment in its performance. His acts, therefore, were the acts of the company within the scope of his employment. His legal authority, of course, but extended to lawful acts. So it is true of all agencies, as they are not appointed for the purpose of committing wrongs, or the performance of illegal acts, except in rare cases. Few actions would be maintainable if a recovery could be had only in cases where express authority is given, or the agent is required, to commit the wrong. It is a general rule, without exception, that when a servant exercises his power or performs his duty in so careless or negligent a manner that wrong ensues to another, the master is liable in damages. This rule has its origin in the foundation of the common law, if it was not borrowed from the civil law.

In this State the rule has a more comprehensive definition and a broader application. It has been repeatedly held, that when acting in the scope of his duty, acts of the servant not

merely careless or negligent, but willful and malicious acts, are embraced.  A railroad conductor or engineer is never authorized to commit wanton or malicious acts on persons or property of others, yet our reports abound in cases holding the railroad companies employing them liable for such act done while discharging their several duties.   Nor is the rule a new one in this jurisdiction, as it has obtained for a quarter of a century or more.   Such acts, under the circumstances, are considered as the acts of the company, as it can act only through agents intrusted with the exercise of their franchises. In this case the clerk was in the exercise of a corporate power, engaged in the performance of a duty delegated to him by the company, and in the performance of that duty he attempted the use of illegal means for the accomplishment of a legal end, and for the benefit of the company.   He did not attempt to suborn the witness for the benefit of himself, but for the benefit of the company,—not with the consent of his superior, but in the course of legitimate and authorized business of the company.   He was unquestionably employed by the company, was acting for it, and did the act to promote its interest.   He was engaged in performance of a duty for the company,—he did the act as a part of the duty, although unauthorized.   We are therefore of the opinion that he performed the illegal and unauthorized act while acting in and as a part of his employment, and we must hold the company is responsible for the act.   For that reason we hold that the evidence was admissible.

If *Green* v. *The Town of Woodbury*, 48 Vt. 5, announces a different rule, it is opposed to the long and well established doctrines of this court, nor do we incline to change the rule of this jurisdiction merely for the sake of conformity.

We perceive no error in the record, and the judgment of the Appellate Court is affirmed.

                                        *Judgment affirmed.*