JOHNSTON, by guardian *ad litem,* Respondent, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*January 9—January 29, 1907.*

*Master and servant: Assault: False imprisonment: Scope of servant's authority: Evidence: Instructions to jury: Appeal and error: Prejudicial error: Principal and agent: Delegation to a subagent.*

1. In an action for assault and false imprisonment, the evidence, stated in the opinion, is *held* sufficient to show that the defendant's employee was acting within the scope of his authority.
2. In an action for assault and false imprisonment it appeared, among other things, that it was the duty of defendant's em-

Johnston v. Chicago, St. P., M. & O. R. Co. 130 Wis. 492.

ployee to look after passenger cars of its railroad; that plaintiff, with other boys, was playing on defendant's right of way, and, while a passenger train was passing, one of the boys threw a stick at and hit one of the cars; that the employee went to plaintiff's home, placed his hands on him and asked plaintiff to go to jail, whereupon plaintiff broke away and ran into the house; that the employee followed, threatening to shoot plaintiff, finally caught him, and, without a warrant or other legal process, forced and compelled plaintiff to go along divers streets to the police station, where he was confined about one hour. The court charged the jury, in effect, that, if it was the employee's duty to look after passenger cars, such authority embraced the effort to discover offenders whose prosecution was possible, and if the acts complained of were done by the employee in way of examining into the case for the purpose of discovering the offenders they were within the scope of his authority, provided he had authority to protect passenger cars. *Held* that, while such instruction was open to criticism because it in effect stated to the jury that authority to an agent to "protect and look after" his master's property rendered the master liable for acts similar to those complained of, yet it was not prejudicial to defendant in view of evidence establishing that a general agent of the defendant had authority to cause the investigation to be made through a subordinate, the employee, and that the employee acted by authority of the general agent, and in view of the further instructions that the burden was upon plaintiff to prove, by a preponderance of the evidence and to a reasonable certainty, that the employee was the agent of the defendant and acted within the scope of his authority in the matter, and that they must find that the acts complained of were done in a way of examining into the case in order to discover the offender.

3. In such case it further appeared that no limitation had been placed upon the manner of the investigation or methods to be employed in obtaining information, and that the assault and imprisonment were for the sole purpose of obtaining information sought through the investigation. *Held*, that the employee was performing his duty in his own way, and, although the methods employed were unlawful and unauthorized, they were within the scope of the employee's duty and were, therefore, the acts of the master.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This action was brought by the plaintiff, a minor, through

his guardian against the defendant to recover for an assault and false imprisonment. The plaintiff on November 19, 1904, with some other boys was playing on or near the right of way of defendant, and while one of the passenger trains was passing one of the boys threw a stick at it, striking the trucks of one of the cars. The following afternoon one Gallagher, a watchman of the defendant, went to the home of plaintiff, placed his hand on plaintiff's shoulder, and said he wanted to talk with him; they went around in front of the house and Gallagher asked plaintiff to go to'jail, whereupon the boy broke away and ran to the house. Gallagher followed, threatening to shoot him, finally caught him, and asked him if he was the boy who threw the stick at the train, which the boy denied. Gallagher afterwards took him to the house of one of the other boys who was present at the time the stick was thrown, then took him to the city hall, where he was questioned relative to throwing the stick and also in reference to stealing coal. It is claimed by plaintiff that Gallagher was acting within the scope of his authority, and therefore defendant is liable for such assault and false imprisonment. The complaint alleges, in substance, that defendant maliciously and with intent to injure plaintiff, with force and arms assaulted him, and then and there directed and caused him to be seized and laid hold of with force and violence, and then and there, without any reasonable or probable cause whatever, and without any writ, warrant, or legal process of any kind for so doing and against the will of plaintiff, unlawfully, wrongfully, and maliciously took him and forced and compelled him to go in and along divers streets in the city of Superior to the rooms occupied by the police department, and then and there against the will of plaintiff unlawfully, wrongfully, maliciously, and falsely imprisoned him for about one hour, and then and there confined him in said room and restrained him of his liberty, without any writ, warrant, or legal process, against the will of plaintiff. Defendant denied

generally the allegations of the complaint. The case was tried
by the court and a jury and the jury found for the plaintiff
in the sum of $250. Judgment was rendered upon the ver-
dict, from which this appeal was taken.

For the appellant there was a brief by *Solon L. Perrin,* at-
torney, and *Thomas Wilson,* of counsel, and oral argument by
*Mr. Wilson.*

For the respondent the cause was submitted on the brief
of *Geo. E. Dietrich* and *Geo. C. Cooper.*

KERWIN, J. The errors relied upon by appellant and dis-
cussed raise the following questions: (1) Whether the night
watchman, Gallagher, had authority to investigate the matter
of throwing the stick at defendant's car; and (2) whether
Gallagher was acting within the scope of his authority when
he arrested and imprisoned the plaintiff. Whether Gallagher
was acting within the scope of his duty and had authority to
protect passenger cars was submitted to the jury. The jury
were instructed that, if they found it was the duty of Galla-
gher to look after passenger cars, his authority embraced ef-
forts to discover offenders whose prosecution was possible. It
is conceded that Gallagher was employed by defendant as
watchman at the Superior yard, where the alleged offense un-
der investigation was claimed to have been committed. There
is evidence that it was part of his duties to prevent property
from being stolen and see that property was not damaged.
The evidence also shows that the general agent, Grochau, in-
structed Gallagher to investigate and report on the matter of
throwing at the train. It is contended, however, by appel-
lant that Grochau had no authority to employ Gallagher to
investigate, and that Gallagher's acts in that regard were not
within the scope of his duty as agent of defendant. The
point is made by counsel for defendant that Grochau had no
authority to hire or discharge men except for the purpose of
handling freight and baggage and selling tickets, and that

Gallagher was hired through authority from defendant's superintendent. It is true that the superintendent by letter instructed Grochau to employ a watchman at a fixed rate per day, but the duties of the watchman were not specifically defined by the superintendent. The fact that Grochau had no authority, without instruction from the superintendent, to hire or discharge a watchman did not interfere with his right to use such servant under his supervision for the purpose of aiding him in the performance of his duties. Aside from the fact that Grochau testified to his authority to investigate matters of injury to passenger cars and his general duties in that regard, the question of Gallagher's authority to look after the safety of the car in question was submitted to the jury, and the jury were told that if Gallagher did not have such authority plaintiff could not recover. So the authority of Gallagher to look after the safety of the car in question, we think, is established upon sufficient evidence by the verdict of the jury. It is also conclusively established by the evidence that Gallagher made the investigation under Grochau and as his subordinate. So we come to the question of the authority of Grochau to authorize such investigation. The evidence is that Grochau was general agent at Superior, and had authority to look after the safety and protection of passenger cars and to look after and investigate any damage done to them; that he had at times looked after matters of damage to property of defendant and had made investigation and reported to his superior officers; that he made investigation respecting injury to defendant's property, sometimes himself and sometimes through subordinates, and did not get special authority from his superior officers for each investigation, but had such authority as general agent, and had general supervision of the office of the company and its depot at Superior. It seems clear from the undisputed evidence that Grochau as general agent of the company had authority to cause the investigation in question to be made, and could make the investigation himself or take to his assistance the watchman, Gallagher.

The principal error complained of is the charge to the jury to the effect that, if they found it was Gallagher's duty to look after passenger cars, such authority embraced the effort to discover offenders whose prosecution was possible, and if such acts were done by Gallagher in way of examining into the case for the purpose of discovering the offenders they were within the scope of his authority, provided he had authority to protect passenger cars.    This portion of the charge is severely criticised by counsel for appellant on the ground that it in effect stated to the jury that authority to an agent to "protect and look after" his master's property rendered the master liable for acts similar to those complained of in this action.    The criticism is not without force.    It is at least a serious question whether such authority would bring the agent within the scope of his duty in making the investigation complained of.    *Mali v. Lord,* 39 N. Y. 381; *Cosgrove v. Ogden,* 49 N. Y. 255; *Allen v. L. & S. W. R. Co.* 6 Q. B. 65; *Carter v. Howe M. Co.* 51 Md. 290, 34 Am. Rep. 311; *Golden v. Newbrand,* 52 Iowa, 59, 2 N. W. 537; 3 Elliott, Railroads, § 1265; *Dolan v. Hubinger,* 109 Iowa, 408, 80 N. W. 514; *Feneran v. Singer Mfg. Co.* 47 N. Y. Supp. 284; *Pressley v. M. & G. R. Co.* 15 Fed. 199; *Baltimore & Y. T. Road v. Green,* 86 Md. 161, 37 Atl. 642; *Gilliam v. S. & N. A. R. Co.* 70 Ala. 268; *Daniel v. Atl. C. L. R. Co.* 136 N. C. 517, 48 S. E. 816, 67 L. R. A. 455; *Georgia R. & B. Co. v. Wood,* 94 Ga. 124, 47 Am. St. Rep. 146; *Singer Mfg. Co. v. Hancock,* 74 Ill. App. 556.    But this portion of the charge, even if error, was not prejudicial to the defendant, since the evidence establishes that Grochau had authority to cause the investigation to be made through his subordinate, and that Gallagher acted by authority of Grochau.    Besides, the court charged the jury that the burden was upon the plaintiff to prove, by a preponderance of the evidence and to reasonable certainty, that Gallagher was the agent of the defendant and acted within the scope of his authority in the matter complained of; and further, that they must find that the acts com-

plained of were done in a way of examining into the case in order to discover the offenders. If the facts established a naked authority to look after and protect property and nothing more, a very different question would be presented. But, as we have seen, the authority under which Gallagher acted was not merely to protect and look after passenger cars, but to investigate past transactions. The question, therefore, arises whether Gallagher was acting within the scope of his authority when he assaulted and imprisoned the plaintiff with a view solely of endeavoring to ascertain who committed the offense. He was acting under authority to investigate and report. Grochau testified:

"I asked him to investigate this matter of throwing sticks and report to me." "I asked him to investigate and give me all the particulars he could find out." "I sent him out to investigate it and report to me."

No limitation was placed upon the manner of investigation or methods to be employed in obtaining information, and it appears that the investigation made was for the purpose of obtaining the desired information. "Investigate" is defined: "To inquire into systematically; ascertain by careful research." Stand. Dict. 917. "To search out; to inquire into; to examine; to scrutinize." Worcester, Dict. 777. "To follow up; to pursue; to search into; to inquire and examine into with care and accuracy; to find out by careful inquisition." Webster, Dict. 713. "Investigation denotes inquiry either by observation, experiment, or discussion." *Wright v. Chicago,* 48 Ill. 285, 290. But it is contended that authority to investigate does not imply authority to do unlawful acts in the execution of such duty, and that when Gallagher unlawfully assaulted and imprisoned the plaintiff he was not within the scope of his duty. But, since he had authority to investigate and was thus engaged, his acts, though unlawful, were binding upon his master. A master is liable for the tortious act of the servant done in the scope of his employ-

ment, though the master did not sanction it, or even though he forbade it. *Phil. & R. R. Co. v. Derby,* 14 How. 468; *Bergman v. Hendrickson,* 106 Wis. 434, 82 N. W. 304.

In *Chicago C. R. Co. v. McMahon,* 103 Ill. 485, a servant was employed to collect evidence for his master in a pending litigation, and while so engaged offered a bribe to a witness, and it was held that such act was binding upon his master. The court said:

"He was empowered generally to perform that duty, without special directions. That part of the business of the company was placed in his charge, with the general authority to use his judgment in its performance. His acts, therefore, were the acts of the company within the scope of his employment. His legal authority, of course, but extended to lawful acts. So it is true of all agencies, as they are not appointed for the purpose of committing wrongs or the performance of illegal acts, except in rare cases. Few actions would be maintainable if a recovery could be had only in cases where express authority is given, or the agent is required, to commit the wrong."

The rule seems to be well settled that, where the servant is engaged in the performance of a duty delegated to him by the master, his tortious acts, within the scope of his authority, though unlawful, unauthorized, or even forbidden, are binding upon his master. *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Bergman v. Hendrickson, supra; Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276; *Eichengreen v. L. & N. R. Co.* 96 Tenn. 229, 34 S. W. 219, 31 L. R. A. 702; *Evansville & T. H. R. Co. v. McKee,* 99 Ind. 519, 22 Am. & Eng. R. Cas. 366; *Chicago C. R. Co. v. McMahon, supra.* In *Bergman v. Hendrickson,* 106 Wis. 434, 436, 82 N. W. 304, this court said:

"If Backstrom committed the assault for the purpose of collecting payment for his masters' liquor, he was within the scope of his employment. It was his method of performing the duty delegated to him, and, although the method may not have been either expressly authorized or even contem-

plated,—nay, although it may have been expressly prohibited,—yet the master is liable for the damages caused thereby, provided he has intrusted to the servant the duty he was attempting to perform. *Craker v. C. & N. W. R. Co.* 36 Wis. 657; *Schaefer v. Osterbrink,* 67 Wis. 495, 30 N. W. 922; *Rogahn v. Moore Mfg. & F. Co.* 79 Wis. 573, 48 N. W. 669; *Reinke v. Bentley,* 90 Wis. 457, 63 N. W. 1055; *Bryan v. Adler,* 97 Wis. 124, 72 N. W. 368."

This language is peculiarly applicable to the case before us. Gallagher was authorized to investigate respecting a past offense. He assaulted and imprisoned the plaintiff for the sole purpose of obtaining the information sought after through the investigation. He was performing his duty in his own way, and, although the methods employed were unlawful and unauthorized, they were within the scope of his duty and were, therefore, the acts of the master.

We therefore hold that Grochau had authority to cause investigation to be made of offenses against the defendant's, property, and that Gallagher was acting within the scope of his authority when he made the investigation; that the acts complained of being done in executing the master's duty, though unauthorized and unlawful, were the master's acts, for the consequences of which it is liable. It follows that the judgment of the court below must be affirmed.

*By the Court.*—The judgment of the court below is affirmed.