SCOTT-BURR STORES CORPORATION *et al.* v. EDGAR.

(Division A. Jan. 3, 1938.)

[177 So. 766. No. 32451.]

Watkins & Eager and Powell, Harper & Jiggitts, all of Jackson, for appellant, Scott-Burr Stores Corporation.

Powell, Harper & Jiggitts, of Jackson, for appellant,
E. W. Swanson.

Ross R. Barnett, P. Z. Jones, Arden Barnett and **John E. Stone,** all of Jackson, for appellee.

494

Argued orally by **W. H. Watkins** and **Louis M. Jiggitts**, for appellants, and by **Ross R. Barnett**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

On the former appeal of this case, as reported in 165 So. 623, there had been a judgment for $15,000 rendered in favor of appellee, Charles Edgar, in the circuit court of Hinds county, against both the appellant corporation and the manager of its local store at Jackson, Miss. The declaration contained two counts, the first one alleging that the appellant E. W. Swanson, while acting within the scope of his employment as manager of the store, committed an assault and battery on appellee by seizing him with both hands and by jerking and pulling him back into the store for the purpose of searching his person to see if he had taken from the store a package of

razor blades which he had picked up from one of the counters to examine. The second count alleged that after appellee was taken back into the store he was there charged by Swanson with having stolen the razor blades in question, the charge being: "You stole some razor blades from this store and put them in your pocket." On the trial the issue of both actual and punitive damages was submitted to the jury. On the appeal here the cause was reversed and remanded because of error in submitting to the jury the question of punitive damages under the second count of the declaration, and for the further reason that the judgment was deemed by the court to be grossly excessive.

On the second trial the appellants pleaded for the first time that the occasion was one of qualified privilege, and that there was cast upon the appellee the burden of proving actual or express malice. To meet this burden appellee offered evidence, over the objection of the appellants, to prove repetitions of the slanderous words set forth in the declaration, and also testimony as to other actionable utterances made two or three days after the first trial, not constituting a repetition of the original slanderous utterances and not consisting of statements of similar import, but which utterances affirmatively disclosed that Swanson was giving expression to a state of mind engendered by appellee's testimony on the former trial and had specific reference thereto. All the subsequent statements were made by Swanson at a time when he was not transacting any business for the appellant corporation or engaged in the performance of any of the duties of his employment, but were admitted in evidence solely for the purpose of enabling the jury to determine Swanson's state of mind as to the existence of actual or express malice at the time he uttered the words complained of in the declaration, and the jury was so instructed.

Appellee recovered judgment for the sum of $10,000 on the second trial, and it is from this judgment that the appellants appeal.

Appellee, in support of the first count of his declaration, offered evidence to show that after he had left the counter where the razor blades were displayed and had gone out onto the sidewalk, a few feet from one of the front doors of the store, he was overtaken by appellant Swanson, seized by the arm and by the belt of his trousers, jerked and pulled back into the store and accused of having stolen some razor blades from the store and told, in substance, to come back in the store and not to put his hands in his pocket; that this occurred in the presence of his companion, Harrison Davis, who had gone in the store with him and also in the presence of two young ladies, all of whom were his friends and acquaintances from the town of Flora, where he lived; and that there were numerous other persons present on the sidewalk at the time to watch a parade on the first day of the State Fair. It was not shown, however, that any person other than his companion Harrison Davis heard him accused out on the sidewalk of having stolen the razor blades, and he did not seek to recover for these slanderous words under the first count of the declaration, but sought to recover only for the assault and battery under this count.

Appellant Swanson denied having committed more than a technical assault and battery on appellee when he followed him out on the sidewalk, and testified that he merely touched him on the shoulder to attract his attention and request him to come back into the store in order that he might investigate as to whether he had taken the razor blades without paying for them. Under this conflict in the testimony, a case was made for the jury under the first count of the declaration; and in view of the fact that the appellant Swanson had no right as a private citizen to take the appellee in charge and deal

with him in the manner testified to by appellee and his witnesses, even if he had committed a misdemeanor by taking the razor blades, we are of the opinion that it was a question for the jury, under proper instructions, as to whether he was entitled to recover both actual and punitive damages on account thereof.

Appellant corporation, however, earnestly insists that the appellant Swanson was not acting within the scope of his authority and employment either at the time of committing the alleged assault and battery complained of under the first count of the declaration, or in uttering the slanderous words inside the store, as complained of under the second count thereof. In support of this contention, the appellant corporation introduced in evidence specific instructions given to the appellant Swanson to the following effect: "You are expressly forbidden to search any employee or customer, or accuse him or her of stealing. When a customer is known to have stolen and you have witnesses, have him or her arrested, if you deem it wise. Suspected customers must be watched to the extent of making it thoroughly uncomfortable for them." However, it will be observed that this instruction did not forbid the manager from trying to detect and apprehend persons who might attempt to steal merchandise from the store, but merely undertook to limit the method by which such result should be attained. The authority to have a customer arrested when it is deemed wise by the manager necessarily implies the duty on the part of the manager to investigate the facts of an alleged theft before causing a customer's arrest. Numerous instances were proven where the appellant Swanson appeared in the local courts to identify goods stolen from the store, and where convictions were had and merchandise recovered. Most assuredly, the duty to make an investigation before reporting a theft to the proper authorities was incident to the authority expressly conferred on the manager. The acts complained of,

if committed, were done in connection with an investigation to determine whether merchandise had been wrongfully taken from the store. We are, therefore, of the opinion that the appellant Swanson was acting within the scope of his managerial duties at the time of the occurrences complained of in both counts of the declaration. 18 R. C. L., sections 254, 256, and 266, pp. 795, 799, and 811, respectively; 39 C. J., pp. 1283-1287, inclusive; Southern Bell Telephone Co. v. Quick, 167 Miss. 438, 149 So. 107; Gill v. Dantzler Lumber Co., 153 Miss. 559, 121 So. 153; Alden Mills v. Pendergraft, 149 Miss. 595, 115 So. 713; Yazoo & M. V. R. R. Co. v. Cornelius, 131 Miss. 37, 95 So. 90; Richberger v. Express Co., 73 Miss. 161, 18 So. 922, 31 L. R. A. 390, 55 Am. St. Rep. 522; Barmore v. Vicksburg, S. & P. R. R. Co., 85 Miss. 426, 38 So. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; New Orleans, J. & G. N. R. R. Co. v. Allbritton, 38 Miss. 242, 75 Am. Dec. 98; Johnston v. Chicago R. R. Co., 130 Wis. 492, 110 N. W. 424; Magar v. Hammond, 183 N. Y. 387, 76 N. E. 474, 3 L. R. A., (N. S.), 1038; New Jersey Steamboat Co. v. Brockett, 121 U. S. 637, 7 S. Ct. 1039, 30 L. Ed. 1049; Singer Mfg. Co. v. Rahn, 132 U. S. 518, 10 S. Ct. 175, 33 L. Ed. 440.

It then becomes necessary to determine, first, whether the occasion complained of in the second count of the declaration was one of qualified privilege, and, second, if qualifiedly privileged, whether appellee proved actual or express malice by competent evidence against either or both of the appellants. In order to clearly state the reasons on which we rest the decision of this case, it is essential that we set forth the facts which prompted the use of the slanderous words complained of, and which the jury under conflicting evidence found to have been spoken. According to his own testimony, appellee went into the store to purchase a package of razor blades for a friend of his who lived at the town of Flora, and for that purpose went to the counter where the blades were

displayed, in company with a friend and neighbor, Harrison Davis. He picked up from the counter a small card a few inches square, on which there was attached one package of blades to remain with the card as sales were made; he detached the blades from the card, and then recalling that his friend had failed to specify whether he wanted single or double edged blades, he placed the card and the package of blades back on the counter, but he did not remember having put the blades on the card in any manner, merely stating that he replaced both on the counter. He thereupon put his hand underneath his sweater and put a penny box of matches in his shirt pocket after having lighted a cigarette. He testified that when he started to leave the counter he thinks he had a package of Lucky Strike cigarettes in his left hand, and that it was about the same color as the package of razor blades, but that he did not carry away the razor blades in question.

According to the testimony of three saleswomen who were near the counter, and who saw what occurred, they in good faith believed that the article inclosed in appellee's left hand was the package of razor blades removed by him from the card. The blades could not be found on the counter after appellee started to leave the store, and the incident was reported to the store manager, Swanson, who followed appellee out of the store and brought him back to the rear of the building, behind the luncheonette counter, where the slanderous words were alleged to have been uttered. One of the saleswomen brought the empty card there and showed it to Swanson, in support of the report previously made to him regarding the theft of the razor blades. Appellee testified that Swanson then ran his hands down on the outside of appellee's sweater, saying to him: ''You stole some razor blades,'' and then further said: ''I am tired of thieves taking things out of here.'' Appellee says that he removed the box of matches from his shirt pocket

to show Swanson what he had put in it at the counter, and was then told, in effect, that if he did not have the blades he might go.

It is not shown that any person heard what was said on this particular occasion, other than appellee and Swanson, presumably because the saleswoman who had brought the empty card from which the razor blades had been detached was evidently returning to her duties. Appellee testified that several persons were nearby, but the proof fails to show that any of them heard what was said. Harrison Davis remained on the outside of the store and only heard what was said there, and which is not complained of in the action for slander contained in the second count of the declaration.

From the foregoing facts, it is clear that the occasion was one of qualified privilege, since both Swanson and the appellee had a mutual interest in the investigation which followed the report made to Swanson by the three saleswomen. Nor can there be any doubt from the undisputed testimony as to what occurred that Swanson honestly believed, in good faith, that appellee had taken the blades without paying for them, and that this belief was engendered by the conduct of the appellee. The fact that he uttered the words testified to by appellee, but which was denied by Swanson, which were slanderous per se would not defeat the privilege. Even if the jury had been warranted in believing from the circumstances that a saleswoman may have heard what was said, this would not have defeated the privilege, because she had a mutual interest in the investigation due to the fact that she was charged with responsibility in connection with the goods displayed on the counter for sale, and she already knew the facts. If the slanderous words alleged to have been spoken on the outside of the store, and which were claimed to have been heard by Harrison Davis, may be treated as a part of the res gestae in connection with the alleged slander on the inside of the

store, the occasion was still privileged, because appellee testified that Davis was standing there by him at the counter when he picked up the razor blades, and that they had gone in the store on a joint enterprise to purchase the blades, and he naturally had an interest in the matter. Under the authorities cited in the briefs, and there seems to be no dissent therefrom, the fact that the alleged slanderous words may have been uttered in the presence and hearing of other persons who were accidentally present and to whom the remarks were not addressed, would not overthrow the qualifiedly privileged nature of the communication. Fahr v. Hayes, 50 N. J. L., 21 Vroom, 275, 13 A. 261; Montgomery Ward & Co. v. Watson, 4 Cir., 55 F. (2d) 184; 17 R. C. L. 344; 36 C. J. 1248; Newell on Slander and Libel (4 Ed.), sec. 394; New York & Porto Rico S. S. Co. v. Garcia, 1 Cir., 16 F. (2d) 734; Hartsfield v. Hines Company, 200 N. C. 356, 157 S. E. 16; Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F. (2d) 700; Odgers on Libel and Slander, p. 245; Walgreen Co. v. Cochran, 8 Cir., 61 F. (2d) 357, and many other cases too numerous to mention.

The occasion complained of being one of qualified privilege, which repels the legal inference of malice otherwise existing from the use of words slanderous per se, it was necessary for appellee to show actual or express malice, and the rule in that regard is too well settled to require the citation of authorities. Such malice is not disclosed from the facts and circumstances of the particular occasion complained of in the second count of the declaration, hence it was required to be shown by extrinsic evidence. Actual or express malice, as distinguished from malice in law, in its ordinary sense denotes ill will, a sentiment of hate or spite, especially when harbored by one person towards another, and exists when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by ill will in what he does and says, with a design to willfully or wantonly injure

another.  Newell on Slander and Libel (4 Ed.) sec. 271 et seq.

It is undisputed in the case at bar that Swanson had never before seen the appellee, and had no reason to entertain any ill will toward him.  It is shown that he did not even know who he was until the first trial of the case. In view of the circumstances surrounding the incident complained of, which show that Swanson had good reason to believe in the truth of what he said—a belief engendered by the conduct of the appellee himself—it cannot be said that he seized upon the incident as a pretext to injure appellee's good name and reputation, or that what was said and done was from a malicious intent. Neither is it shown that at any time thereafter he ever mentioned the matter to any friend or acquaintance of appellee, although he did undertake to explain the occurrence to one of his own friends and acquaintances that day under the stress of the moment, and when asked about it after the suit had been filed, and on one occasion laughingly told one Buddy Shaw about it a few days after the occurrence without having been interrogated in regard to the matter, but there is no definite testimony that he identified the appellee other than to say that he was a boy from up about Flora.

The witness Shaw testified that on one other occasion, when the appellant Swanson was dining at the Ritz Café with his wife two or three days after the first trial which had resulted in the $15,000 verdict being rendered against his employer, to his embarrassment as manager of the store, Swanson said that appellee had sworn some lies on him at the trial and used a vile epithet in expressing his state of mind toward the appellee.  The witness said that Swanson was talking about the former trial, and the record fails to show that he made any reference to the occurrence in the store or any comment thereon.  And we think that Shaw's testimony affirmatively shows that what was said on this occasion is not at all referable in

point of relevancy to Swanson's state of mind at the time of the occurrence complained of in the declaration, but evinced a state of mind produced by subsequent events.

Many cases hold that subsequent repetitions of slanderous words and statements of similar import may be introduced in evidence to establish actual or express malice if set out in the pleadings; other cases hold that the evidence should be confined to repetitions occurring prior to the filing of the suit; it is uniformly held that they are admissible, when competent at all, only to prove actual or express malice, but never to enhance the damages, and it is the general rule, with which our court is in accord, that if the evidence is offered as an admission, or otherwise for the purpose of proving the fact of the original slanderous words having been uttered, and as a basis of liability therefor, where the defendant is a corporation and of necessity the repetitions, if any, are made by an agent, the corporate agent must be attending to some business for the corporation, acting within the scope of his authority and must be addressing his remarks to a person having an interest therein. Louisiana Oil Corporation v. Renno, 173 Miss. 609, 157 So. 705; Great A. & P. Tea Co. v. Majure, 176 Miss. 356, 167 So. 637, 168 So. 468; and numerous authorities from this and other jurisdictions. However, no case decided by this court or from any other jurisdiction has been called to our attention in which the precise question was involved as to the admissibility of subsequent repetitions of the original slanderous words, spoken on an occasion of qualified privilege, by an agent of a corporation where the repetition was made at a time when the agent was not transacting any business for the corporation or engaged at the time in any of the duties of his employment, and where such evidence of repetitions is offered only to show malice. But since the subsequent repetitions of the slanderous words or statements of similar import are not admitted for the purpose of establishing liability therefor in

the first instance, and are admitted only for the purpose of showing the existence of malice in the mind of the agent complained of in the declaration, we fail to see any sound or logical reason why they should not be admitted against the corporation as well as the agent to show whether the agent acted through malice in making the original accusation, since the malice of the agent would be the malice of the corporation.

As to what subsequent statements are therefore admissible, we find the rule stated in Newell on Slander and Libel (4 Ed.), sec. 287, as follows: "Proof that the defamatory statements declared on, or words of similar import had been spoken or written at other times, is admissible to show malice, whether such statements were made before those for which damages are sought or afterwards, even after commencement of suit."

In the case of Frazier v. McCloskey, 60 N. Y. 337, 19 Am. Rep. 193, it was said that "the plaintiff should never be permitted to give in evidence words which might be the subject of another action." However, we are of the opinion that the better rule is that stated by Mr. Newell, as above quoted, and it is supported by the greater weight of authority.

Mr. Wigmore says: "The subject of the other utterances is in England not considered to be material; for clearly a defamatory charge of a wholly different tenor may equally evidence a feeling of ill-will or malice. But in this country it is generally laid down (with varying phrases) that the other utterance must be upon the same subject." Citing cases from California, Connecticut, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Pennsylvania, Vermont, Virginia, and the United States Supreme Court. Vol. 1, p. 743, Wigmore on Evidence. While he criticizes the rule requiring that the utterances must be on the same subject, nevertheless he recognizes that such is the general rule in this country.

We therefore hold that the alleged statements made by the appellant Swanson at the Ritz Café, two or three days after the first trial, which reflected a state of mind engendered by intervening circumstances, and which did not constitute a repetition of the original slanderous words or statements of similar import, and were not referable in point of relevancy to the occurrence complained of in the declaration, were inadmissible, and that the error was prejudicial. What was said on that occasion was neither competent nor relevant. Its admission is alone sufficient ground for a reversal of the cause.

The question now remaining to be decided is whether the other subsequent statements made by Swanson, which constituted repetitions of the charge declared on, or which are referable thereto to show his state of mind as to actual or express malice at the time complained of, are sufficient to show such malice. It has been correctly said that "malice is the gist—that is, the main point—whereon rests an action of slander." In Newell on Slander and Libel, sec. 292, it is stated that, "If the defendant honestly believed the plaintiff's conduct to be such as he described it, the mere fact that he used strong words in describing it is no evidence of malice. The fact that the expressions are angry and intemperate is not enough; the proof must go further and show that they are malicious."

The following rule is announced in Newell on Slander and Libel (3 Ed.), sec. 397: "If the evidence adduced is equally consistent with either the existence or the non-existence of malice, there can be no recovery, for there is nothing to rebut the presumption which has arisen in favor of the defendant from the privileged communication." Gust v. Montgomery Ward & Co., 229 Mo. App. 371, 80 S. W. (2d) 286; Rosenberg v. Mason, 157 Va. 215, 160 S. E. 190, 202. In the Rosenberg Case, the court, in dealing with a privileged occasion, said: "It is not sufficient in a case such as this that the evidence be con-

sistent with the existence of actual malice, or even that it raise a suspicion that the defendant might have been actuated by malice or a doubt as to his good faith. It must affirmatively prove the existence of actual malice, and to do so it must be more consistent with the existence of actual malice than with its nonexistence.''

In the case of Walgreen Co. v. Cochran, 8 Cir., 61 F. (2d) 357, 359, it is said that ''it must be established that the person making the statement was actuated by motives of spite, ill will, or a malicious purpose to do an injury to the person about whom or to whom the words were spoken.'' And the case of Gust v. Montgomery Ward & Co., supra, held that since the evidence showed that a saleswoman and the customers involved were strangers to each other there was no apparent reason why she should bear them any ill will, or be actuated by malicious motives in mistakenly, but in good faith, accusing them of having stolen an article of merchandise.

It cannot be successfully contended that the mere fact that a plea of justification is filed is alone evidence of malice sufficient to go to the jury. It is only where a defendant will neither abandon the plea nor give any evidence to support it, obstinately persisting in the charge to the last without any sufficient reason, that such plea constitutes evidence of malice. Newell on Slander and Libel, sec. 298.

The case of Dixon v. Harrison Naval Stores, Inc., 143 Miss. 638, 109 So. 605, is authority only to support the contention of the appellee as to the first count of the declaration, there being no question of qualified privilege involved in that case.

We are of the opinion that the peremptory instruction requested by each of the appellants on the second count of the declaration should have been granted, and that the cause should therefore be reversed and remanded for a new trial on the first count only.

Reversed and remanded.