## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 93-CA-00663-SCT

*TRENETTE BOONE AND JOHNNY STATEN*

*v.*

*WAL-MART STORES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/27/93 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LAUREL G. WEIR |
| | THOMAS L. BOOKER JR. |
| ATTORNEY FOR APPELLEE: | EDLEY H. JONES III |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 9/12/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/96 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Trenette Boone and Johnny Staten appeal from an adverse jury verdict finding Wal-Mart Stores, Inc., not liable for defamation arising out of a charge of shoplifting. Since two jury instructions erroneously state the law, we reverse and remand for further proceedings. We find it unnecessary to address other issues on appeal.[(1)]

## FACTS

¶2. Trenette Boone and Johnny Staten went to the Wal-Mart store in Carthage, Mississippi, seeking to accomplish certain commercial transactions. After a thirty minute stay, they paid separately for various items and left. Maeola Gill, a Wal-Mart employee, saw Staten take an item from a razor counter and place it in his pocket.[(2)] Gill's superior told her to go outside and get a description of the suspect's car and license tag. Gill went outside where she saw a police car. She assumed (wrongly) that Wal-Mart had summoned the police. She told Officer Carson, "That's the car there driving off."

Officer Cornelius Turner, in a separate vehicle, testified that he provided backup to Officer Carson. Turner testified that he responded to a backup call from Officer Carson because of "a call from Wal-Mart that they had some subjects down there that was shoplifting and they had left the store . . . ." Both patrol cars responded with blue lights flashing. The police pulled Boone and Staten over two blocks away at a Kentucky Fried Chicken establishment. Turner testified that Boone and Staten consented to a search of their persons and car. No stolen objects were found. The police, with their quarry, Boone and Staten, in tow, returned to the Wal-Mart store. At the service desk, within ear shot of approximately one hundred people, Wal-Mart employees confronted Boone and Staten.

¶3. The parties dispute whether Wal-Mart employees accused Boone and Staten of shoplifting upon their return to the store. Officer Turner testified that the employees did accuse them of stealing. Trenette Boone testified that Wal-Mart employees identified Staten and her as the shoplifting suspects and accused Staten of having taken an item. Staten's testimony was inconsistent and self-conflicting. Maeola Gill, the witness of the alleged theft, having apparently washed her hands of the entire affair, never came to the front of the store during this encounter.

¶4. It is clear that during the confrontation Staten voluntarily emptied the contents of her purse onto the counter of the service desk. Various reports dispute whether Staten emptied his pockets of his own volition, or complied with a request of Wal-Mart employees.

¶5. In the end, no stolen merchandise was ever found. Staten and Boone demanded a refund of the items they had previously purchased. Wal-Mart sagaciously complied and some employees apologized for any inconvenience the duo may have suffered. These actions did not satisfy Boone, whose sense of dignity had been offended. She later returned to the store asking the manager for an apology from Gill. Boone testified that to date Gill had not apologized. Gill testified that, at her manager's prompting, she had attempted to call Boone two or three times to apologize but had been unsuccessful. Hence, this action originated.

## DISCUSSION

¶6. The outcome of this case hinges on the propriety of two jury instructions. Our standard of review applicable to jury instructions is as follows:

> On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. Accordingly, defects in specific instructions do not require reversal where all instructions taken as a whole fairly -- although not perfectly -- announce the applicable primary rules of law. However, if those instructions do not fairly or adequately instruct the jury, this Court can and will reverse.

*Peoples Bank and Trust Co. v. Cermack*, 658 So. 2d 1352, 1356 (Miss. 1995) (citations omitted).

¶7. Our case law defines defamation as follows:

> A claim of defamation requires that the following elements be established: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and, (4) either actionability of the statement irrespective of special harm or the existence of special harm

caused by the publication.

*Blake v. Gannett Co., Inc.*, 529 So. 2d 595, 602 (Miss. 1988) (citing *Chatham v. Gulf Pub. Co., Inc.*, 502 So. 2d 647, 649 (Miss.1987)).

¶8. As regards the defamation of a private person, Justice Sullivan previously stated for the Court that where:

> the defamation charged is not against a public person but a private person and therefore [the law] requires a much less extreme standard for purposes of allowing the plaintiff to prove its case.

> "In *Gertz v. Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the court held the First and Fourteenth Amendments **require at a minimum a showing of negligence before a private figure may recover an award of actual damages for libel**; a public figure must show actual malice, defined as ill will or reckless disregard of the falsity of the statements made."

> *Whitten v. Commercial Dispatch Publishing Co., Inc.*, 487 So. 2d 843, 844 (Miss.1986).

*Eselin-Bullock & Assoc. Ins. Agency, Inc. v. National General Ins. Co.*, 604 So. 2d 236, 241 (Miss. 1992) (emphasis added).

¶9. Our analysis of this case is confounded by the inartfully drafted language of Section 97-23-95 of the Mississippi Code of 1972, which states as follows:

> If any person shall commit or attempt to commit the offense of shoplifting, or if any person shall wilfully conceal upon his person or otherwise any unpurchased goods, wares or merchandise held or owned by any store or mercantile establishment, the merchant or any employee thereof or any peace or police officer, acting in good faith and upon probable cause based upon reasonable grounds therefor, <u>may question such person in a reasonable manner</u> for the purpose of ascertaining whether or not such person is guilty of shoplifting as defined herein. Such questioning of a person by a merchant, merchant's employee or peace or police officer shall not render such merchant, merchant's employee or peace or police officer civilly liable for slander, false arrest, false imprisonment, malicious prosecution, unlawful detention or otherwise in any case where such merchant, merchant's employee or peace or police officer acts in good faith and upon reasonable grounds to believe that the person questioned is committing or attempting to commit the crime of shoplifting.

(Emphasis added.)

¶10. This statutory language supplants the ancient common law qualified privilege provided to merchant publishers of defamatory material. Other privileges common to our law which include family privileges and matters of public interest are unaffected by this statute.

## ANALYSIS

### 1.

¶11. Jury instruction D-13 reads:

The Court instructs the jury that you may not award damages for mental pain and suffering alleged by the Plaintiffs, or either one of them, as a result of the alleged wrongful acts of Wal-Mart Stores, Inc., if you find from a preponderance of the evidence that the conduct of Wal-Mart's employees did not constitute an intentional act of malice or a wanton or shamefully gross wrong against the Plaintiffs, or either of them.

1. An act or failure to act is malicious if prompted or accompanied by ill will or spite or grudge, either towards the Plaintiffs individually or towards all persons in one or more groups of categories in which the Plaintiffs are a member.

2. An act or failure to act is wanton if done with a reckless or callous disregard of, or indifference, to the rights of one or more persons, including the Plaintiffs, or either of them.

3. A wanton or shamefully gross wrong is that course of conduct which under the particular circumstance discloses a reckless indifference to the consequences without exertion of any substantial effort to avoid them.

In considering these definitions I have given to you, you should determine from a preponderance of the evidence whether or not the conduct of Wal-Mart's employees constituted gross negligence, malicious or wanton disregard of the rights of the Plaintiffs, or either of them.

On the other hand, should you find that the acts of the Wal-Mart employees, although wrongful, done in good faith, then the Plaintiff may not recover for mental pain and suffering.

(Emphasis added.)

¶12. This instruction is an incorrect statement of the law under the facts of this case. It is preemptive in nature. By instructing the jury that malice must be found to award pain and suffering damages, the Court is in essence telling the jury that Wal Mart's actions were done: (1) in good faith, (2) with probable cause, and (3) in a reasonable manner. Even assuming that the first two elements are undisputed, still a jury question obtains as to the reasonableness of the manner of the search. This instruction was erroneously granted. The plaintiff did not have to prove malice in this case. Fault in defamation cases involving private persons, regardless of their social standing, or ranks and privileges, may be predicated on the negligence of the publisher. *Eselin-Bullock & Assoc. Ins. Agency, Inc. v. National Gen'l Ins. Co.*, 604 So. 2d 236, 241 (Miss. 1992).

**2.**

¶13. Amended instruction D-9 reads:

The Court instructs the jury that you may not award damages against Wal-Mart Stores, Inc. based upon the mere fact that no unpaid for merchandise of Wal-Mart was found upon the person of Trenette Boone or Johnny Staten. The law of the State of Mississippi allows a merchant to stop and question a person to investigate whether merchandise of Wal-Mart Stores, Inc. had been taken, if you find a preponderance of the evidence that Wal-Mart's employees acted in good faith and upon probable cause, based upon reasonable grounds therefore, to suspect either Trenette Boone or Johnny Staten, or both of them of shoplifting. You may not

judge the conduct of Wal-Mart's employees by exercising hindsight, but rather you must judge their conduct based upon the observations and facts known to them at the moment these events occurred.

Should you find from a preponderance of the evidence that the employees of Wal-Mart acted in good faith and upon probable cause, based upon reasonable grounds therefore, to suspect either Trenette Boone or Johnny Staten, or both of them of shoplifting, then Wal-Mart Stores, Inc. is immune from liability for these actions, and you must return a verdict in favor of the Defendant Wal-Mart Stores, Inc.

¶14. The trial court erred in granting this instruction. In both their motion for a new trial and their brief on appeal, Boone and Staten forcefully argue that in order to enjoy privilege afforded by Section 97-23-95, the defendant must affirmatively prove more than good faith and probable cause. Boone and Staten assert that in order to be immune from damages, the defendant must also prove that it conducted the questioning of the suspected shoplifters in a reasonable manner. The appellants are correct in their assertion.

¶**15.** Wal-Mart asserts that the statements of its employees were made in good faith and that probable cause was a question for the jury to determine. We agree and assume, as we must, that the jury followed its instructions and resolved this evidence in favor of Wal-Mart. However, the instruction is still erroneous since the statute commands that the questioning be done in a reasonable manner. Otherwise a jury could find that Wal-Mart acted unreasonably and still be constrained to return a verdict for the defendant. This Court has stated: "Whether privilege is available as a defense may depend on the manner in which the communication is made. The protection of a qualified privilege may be lost by the manner of its exercise, although belief in the truth of the charge exists." *Southwest Drug Stores of Mississippi v. Garner*, 195 So. 2d 837, 841 (1967).

¶16. In *Garner*,

[the shopkeeper] had observed [the female customer] and believed by [the customer's] actions that [the customer] was committing an act of shoplifting; that [the customers] actions gave him probable cause to investigate, and that he acted in good faith and upon an occasion of privilege in carrying out his duties to protect his employer's property.

Although the occasion was one of qualified privilege, the privilege was lost by the manner in which it was exercised. The customer testified, and the jury found, that was wrongfully accused of stealing in a rude and loud voice in the presence of other people outside the place of business. Granting that [the shopkeeper] had reason to believe that [the customer] had put a bar of soap in her purse and left the store without paying for it, and that [the shopkeeper] had probable cause to make inquiry, still [the shopkeeper] was careless and negligent in his method of ascertaining whether [the customer] had paid for the soap.

*Id.* at 840 (emphasis added).

¶17. The record reveals that there are significant factual issues for the jury to decide. These include whether Maeola Gill should have told the police to pursue Staten and Boone and then absent herself when they returned to clear the air. Also disputed is whether Wal-Mart conducted the questioning at

the front of the store reasonably. The foregoing instruction is erroneous, because it allowed the jury to find Wal-Mart not liable despite a finding that Wal-Mart conducted the questioning in an unreasonable manner.

## CONCLUSION

¶18. The small courtesies and respect for our fellow citizens, which were common in the small shops and stores of our downtowns of the past, must somehow be engrafted upon the corporate culture evidenced by today's strip malls and suburban sprawl. Human nature and civil society still demand that both customers and shopkeepers evince a certain respect one for the other. Our law in these regards, as evidenced in today's holding and prior cases, seeks to balance the rightful desire of mercantilists to prevent the unlawful loss of their wares against the rights of private citizens to enjoy respect and dignity. The interests of our society in maintaining a peaceful and productive community demand that its members, interdependent on one another as they are, respect one another. Business entities and their agents must treat their customers with due consideration and deference. Likewise, customers must recognize the right of business persons to temporarily interrupt their lives to ascertain whether the customer is attempting to escape from an honorable economic transaction. Without this common respect, the community itself is naught.

¶19. As to the defamation of a private person in a commercial setting, we find that the balance required by law has been skewed in the case instanter. Here an extra burden was placed upon the customer to prove more than negligence on the part of the business entity. Simultaneously, the business entity was improperly relieved of its statutory burden to show that it acted in a reasonable manner. The jury was improperly instructed as to these two points of law. We therefore reverse and remand for further proceedings to set the balance aright.

¶20. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR.**

1. As to the ***Batson*** issue raised on appeal, we call to the trial court's attention our recent decision in *Stewart v. State*, 662 So. 2d 552 (Miss. 1995), as informative on remand.

2. We find it noteworthy that many of the allegedly stolen items in our defamation cases deal with the minor sundries and notions of the bygone drugstore days. *See Southwest Drug Stores of Mississippi v. Garner*, 195 So. 2d 837, 841 (1967) (soap); *J.C. Penney Co., Inc. v. Cox*, 246 Miss. 1, 4, 148 So. 2d 679 (1963) (jar of deodorant); *Scott-Burr Stores, Corp. v. Edgar*, 181 Miss. 486, 177 So. 766 (1938) (razor blades). This case is no different. The preceding could be analogized as "jug cases" as defined by Professor Thomas Ethridge, noted professor of law and competent jazz musician.